2024 IL App (1st) 232503

SECOND DIVISION
March 5, 2024

No. 1-23-2503B

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 MC 1115108 |
| | ) | |
| KESHAUN VANCE, | ) | Honorable |
| | ) | Barbara Dawkins, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Keyshaun Vance filed an appeal under what is commonly known as the Pretrial Fairness Act pursuant to Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023), challenging the circuit court's order denying him pretrial release. He claims the court's findings were flawed, and the court violated the requirement that its findings be reduced to writing. We find no error in the court's findings and conclude that the trial court's uniquely detailed oral findings regarding the inadequacy of pretrial release conditions satisfied the purpose of the written-findings requirement.

¶ 2 The State charged defendant with unlawful possession of a machine gun and unlawful use of a weapon by a felon, both Class X felonies, as well as a misdemeanor charge of criminal trespass to motor vehicle. See 720 ILCS 5/24-1(a)(7)(i), 24-1.1(a), 21-2(a) (West 2022).

¶ 3 On December 14, 2023, the State filed a verified petition to deny defendant pretrial release based on the grounds that he posed a real and present threat to the safety of any person, persons, or the community based on the specific and articulable facts of the case, and that no set of conditions would mitigate that danger.

¶ 4 The State provided the following proffer: on December 13, 2023, Chicago police officers had a license plate reader hit for a black 2023 Hyundai Sonata that had been reported stolen. Officers contacted Police Helicopter One for assistance, and the helicopter followed the vehicle from Cermak Road to Loomis Street, then from Loomis to Cullerton Street. The stolen car pulled into an alley between Cullerton Street and Throop Street. Officers arrived on both sides of the alley, blocking the stolen car.

¶ 5 The car then began driving in reverse, striking a parked vehicle. After hitting the parked car, defendant got out of the driver's seat and attempted to flee on foot. One of defendant's codefendants got out of the front passenger seat and attempted to flee as well. The second codefendant remained seated in the rear driver's side seat and surrendered as defendant and the other codefendant fled. The fleeing codefendant did not get far before falling and was quickly apprehended by police. Defendant, on the other hand, ran through an adjacent gangway and was about a block from the scene when he was apprehended.

¶ 6 Officers obtained a key to the stolen car from defendant. During an inventory search of the car, officers found three guns. Located on the floorboard by the driver's seat was a loaded, black Glock 21 semiautomatic handgun with five live rounds and one in the chamber; it was altered with a "switch" that allowed it to function as a fully automatic weapon. Located on the

2

rear driver's-side floorboard was a loaded, black semiautomatic handgun. Located under the front passenger's seat was a black Glock 19 semiautomatic handgun with an extended magazine.

¶ 7    The State argued that defendant was a danger in that he stole a vehicle, he was in possession of a fully automatic handgun, he hit another car while driving in reverse to avoid the police, and that he then fled on foot. The State argued that no set of conditions could mitigate his threat to the community.

¶ 8    Defendant argued that the proof was not evident and the presumption not great that he committed the charged offenses because he was not seen "possessing, holding, touching, gesturing toward the firearm at all." Defendant argued that there was no fingerprint evidence at this stage, and his only connection to the gun was that it was located below his seat while driving the (stolen) car.

¶ 9    Defendant also emphasized the lack of any violence in his criminal history. He had one felony conviction for retail theft for which he received probation. As a juvenile, he had three arrests for retail theft and one for criminal trespass to property; but he had no priors regarding firearms. Defendant also noted that he was age 22, he had obtained his GED from Thornton High School, he works with his girlfriend managing short-term rentals, he has a two-year-old daughter whom he takes to daycare every day, and he has obtained two professional licenses—one a realty license and the other, according to the transcript, a "breading license," which may well mean a "beading license." He also stated that he has strong ties to the community and family.

¶ 10    The trial court found that there was proof evident and a presumption great that defendant committed the charged offenses. As that finding is not contested on appeal, we need say nothing more on that topic.

¶ 11    In its written order, the court found that defendant was a threat to the community based on the fact that defendant "was found with a machine gun. He attempted to elude police and hit a

car. He was in a stolen car with two other men with guns. He is 22 years old." In its oral ruling, the trial court stated that defendant's criminal background was not concerning, but

"[w]hat is concerning to me is the type of gun that was recovered in this case and the circumstances of this arrest. So I'm looking at the fact that you were alleged to have been in a vehicle with two other people all armed to the tooth with firearms, that when police came into contact or were brought to the attention of you in this stolen car—let's also point that out that the car was stolen—that you [eluded] or alleged to have [eluded] authorities hitting parked cars leading police on a chase."

¶ 12    Though the court acknowledged that defendant's mitigation was "significant," the court nevertheless found that "the State has established by clear and convincing evidence that you pose a real and present threat to the community based upon the fact that we have got you as the driver in a stolen car, you [are] armed with, alleged to have been armed with a machine gun, two other people armed to the tooth evading police, hitting parked cars."

¶ 13    On the issue of whether any set of conditions were sufficient to mitigate defendant's threat to the community, the court inquired of the representative of pretrial services to understand the effectiveness of home confinement. After talking through the details of home confinement, in which the system sends a "ping" to pretrial services if the defendant leaves his permitted area, the court stated:

"THE COURT: Part of my concern with home confinement is always that there is at least the perception that we are not notified as judges until the next court date if there has been a violation, so that has been at least part of my hesitancy on placing people on home confinement. I want to know if that is the case or not.

PRETRIAL REPRESENTATIVE: Yes, that's correct, your Honor. The technician—it will ping if they are out of the zone, and then their post release officer will

receive an e-mail saying that they are out of the zone, and then that officer will write up a noncompliance report to notify the judge.

> THE COURT: Then the judge doesn't find out until the next court date?

> PRETRIAL REPRESENTATIVE: Correct because post release is not 24 hours so that officer would not have knowledge of the violation until the working hours.

> THE COURT: Okay, so if I am on home confinement and I violate today, and my next court date is not until January 10, then my judge doesn't find out until January 10, so I can be noncompliant for that entire time, and the judge wouldn't know? I mean, that is at least my perception. I just want to make sure my perception isn't—

> PRETRIAL REPRESENTATIVE: *** Pretty much, your Honor, yes."

¶ 14    The court then addressed whether any set of conditions could mitigate the threat posed by defendant:

> "So this is where I was having the issue because of what I said, because you have significant mitigation, and because of the lack of—there is no violence in your background, and I'm troubled by this case, and I'm troubled by the fact this is a machine gun. So these are my options. My option is electronic monitoring. Electronic monitoring still gives you the two days of access to the world, all right, but the good thing about electronic monitoring is that the Court knows almost well, within a relatively short period of time that there has been a violation. So then my next consideration is home confinement. That is why I was asking the questions about home confinement because I do feel that there needs to be something beyond just a pretrial supervision. Pretrial supervision where you are calling a pretrial officer. I feel based upon these facts and circumstances, the defendant's young tender age of 22 that there needs to be something beyond just reporting to a pretrial officer even if it is once a week. Home confinement,

I'm troubled by there being such a lapse of time between a potential violation and the court notification. That doesn't suffice in this Court's opinion, so there [are] few options that I have. So I can only deal with the options I have. I have electronic monitoring. I have home confinement. I have pretrial supervision, pretrial monitoring, and I have detention. As such I find that there is nothing short of pretrial detention that could mitigate the real and present threat that he poses to the community based on the specific articulable facts of this case. These are the options that this Court has. That is my finding based upon the specific articulable facts of this case for the reasons I have stated."

¶ 15    In its written order on the subject of conditions, the court was far less detailed and individualized, writing that no set of conditions could mitigate the threat posed by defendant because "[d]efendant was found with a machine gun. He led police on a helicopter chase. He hit a car. He was in a stolen car with 2 other men with guns."

¶ 16    The court thus ordered defendant detained.

¶ 17    Defendant filed a timely notice of appeal. Defendant did not file a supplemental memorandum before this Court, electing to stand on the notice of appeal. The State filed a supplemental memorandum in response to the notice of appeal.

¶ 18    Under the new pretrial-release provisions in state law, defendants are presumed eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). The State may detain an accused if it establishes that the charged offense is eligible for detention and then proves, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant committed an offense which qualifies them for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case; and (3) no condition or combination of conditions can mitigate that real and present threat. *Id.* § 110-6.1(e).

¶ 19    In his notice of appeal, defendant does not deny that he was charged with a detention-eligible offense and does not challenge the first prong of evident proof. Defendant advances three arguments: (1) the court erred in finding defendant to be a threat to the community; (2) the court erred in finding that no set of conditions could mitigate that threat; and (3) the court violated the requirement that the court set out its findings in a detailed written order.

¶ 20    Though the appellate courts have been split on the standard of review of detention orders, and our supreme court has not settled that split, we need not resolve that issue here, as our conclusion would be the same under any standard of review.

¶ 21    As to whether he posed a threat to the community, defendant argues that there is no evidence that he "threatened any person with the firearm, pointed the firearm at any person, or brandished the firearm in any way." Nor is it alleged that he ever physically held the firearm. And finally, defendant points to the lack of violence in his criminal history, his employment, his strong family ties, his obtaining of two professional licenses, and his GED.

¶ 22    We uphold the court's finding that the State proved, by clear and convincing evidence, that defendant posed a real and present threat to the community. We agree with the trial court that the most troubling aspect of this crime as alleged is that defendant was in (constructive) possession of a loaded, fully automatic weapon, along with two other men likewise armed, while defendant drove a stolen automobile. The combination of those two crimes is startling; while it is bad enough to possess a weapon that has been rigged to be fully automatic—meaning one press of the trigger unleashes a tirade of bullets in rapid succession—it is even more disturbing that defendant was possessing this highly destructive weapon while driving an automobile that could not be traced to him. However nonviolent defendant's criminal record may be, it does not stretch the imagination at all to believe that, in stopping that car and arresting the three individuals when they did, the police may have prevented a violent crime from imminently taking place.

¶ 23    We emphasize here that these are only allegations; we are in no way commenting on the strength of the proof against defendant, who is entitled to the presumption of innocence at trial. We are only commenting on the conduct as alleged in the State's proffer, as we are charged to do. See *id.* § 110-6.1(f)(2) (parties may proceed by way of proffer). But based on that proffer, the highly destructive nature of the firearm defendant possessed, as well as those possessed by his two passengers, and in the context of traveling in a stolen vehicle, takes this case far beyond an ordinary case of gun possession.

¶ 24    We likewise uphold the finding that no set of conditions could mitigate the risk defendant posed. The court clearly considered several options, including electronic monitoring and home confinement, as alternatives to detention and found them wanting. The court took the step of questioning the representative from pretrial services and concluded that those lesser alternatives would not be sufficiently effective to *promptly* bring any violation of those conditions to the court's attention. We find no error in that reasoning.

¶ 25    Finally, defendant argues that the court violated the requirement in section 110-6.1(h)(1) of the Code of Criminal Procedure of 1963, which requires

> "a written finding summarizing the court's reasons for concluding that the defendant
> should be denied pretrial release, including why less restrictive conditions would not
> avoid a real and present threat to the safety of any person or persons or the community,
> based on the specific articulable facts of the case." *Id.* § 110-6.1(h)(1).

¶ 26    Defendant argues that the court did not explain in writing why no set of conditions could mitigate the threat he posed.

¶ 27    True, as we quoted above and reprint here, the written findings themselves regarding conditions were little more than a reiteration of the findings that went into the determination of dangerousness: "Defendant was found with a machine gun. He led police on a helicopter chase.

8

He hit a car. He was in a stolen car with 2 other men with guns." That does not speak at all to the question of conditions. Dangerousness and conditions are different factors and deserve separate consideration. See, *e.g.*, *People v. Castillo*, 2024 IL App (1st) 232315, ¶ 32; *People v. Turner*, 2024 IL App (1st) 232082-U, ¶ 21; *People v. Martin*, 2023 IL App (4th) 230826, ¶ 23. We cannot emphasize enough here, as we have in the other cited cases, that merely reciting the threat that a defendant poses is not enough, by itself, to demonstrate why not set of *conditions* would suffice to *mitigate* that threat. Trial courts must address those factors separately on pain of reversal if they do not.

¶ 28    But we do not find a violation of the written-findings requirement here for a different reason. As we quoted above (see *supra* ¶¶ 13-14), the trial court orally explained in considerable detail why alternatives to detention would be unsatisfactory, after taking the unusual step of questioning the pretrial services representative about those alternatives. And that oral ruling, of course, was reduced to writing in the report of proceedings.

¶ 29    A recent line of case law has indicated that the court's oral ruling, if reduced to writing in a transcript of proceedings (as is typical), should be considered along with the written order and may suffice, by itself, to satisfy the written-findings requirement as long as the oral findings are explicit and individualized, thus explaining to defendant the basis for detention and providing sufficient detail for meaningful appellate review. See, *e.g.*, *People v. Andino-Acosta* 2024 IL App (2d) 230463, ¶ 22 (written-findings requirement was satisfied in that "[t]he oral ruling was explicit and individualized and, read together with its written findings, was sufficient to apprise the defendant of the reasons for its ruling and to accommodate review under the Act. *** Remanding this cause so that the trial court could transcribe its oral findings into a written order would not serve the interests of justice."); *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 11 (no violation of writing-findings requirement, as transcribed oral ruling was sufficient to permit

9

meaningful appellate review); *Castillo*, 2024 IL App (1st) 232315, ¶ 31 (written-findings requirement was violated; "While we agree with the court in *Andino-Acosta*, a circuit court must still provide an explanation of its consideration of less restrictive conditions in its verbal ruling as transcribed *or* in its written order." (Emphasis added.)); *People v. Staake*, 2024 IL App (4th) 231420-U, ¶ 20 (agreeing that transcribed oral findings may be considered with written order but finding violation of written-findings requirement, as "the court did not make any findings, either in its oral pronouncement or its written order, as to why conditions of pretrial release could not mitigate the threat it found defendant posed to the safety of the community").

¶ 30     Many of these recent appellate decisions have relied on decisions from our supreme court, which has found that other statutes requiring written findings were satisfied by transcribed oral rulings that notified the parties of its reasoning and allowed for meaningful appellate review. In the decision of *In re Madison H.*, 215 Ill. 2d 364 (2005), a juvenile-neglect case, the statute required the circuit court to make written findings regarding neglect. The supreme court found that "[e]xplicit oral findings stated during a dispositional hearing advise the parties of the basis for the removal of the minor and, once transcribed, provide an equal opportunity to review the validity of the findings on appeal as well as written findings contained in an order." *Id.* at 374-75. To hold otherwise and vacate for lack of a written order "unnecessarily elevates form over substance and disrupts the adjudication of a minor for purely technical defects that do not prejudice the parties." *Id.* at 375.

¶ 31     The supreme court reaffirmed this point three years later in the context of a statute requiring written findings in a termination-of-parental-rights case. See *In re Leona W.*, 228 Ill. 2d 439, 458-59 (2008) (explaining that, in *Madison H.*, the court noted "that the purpose of the writing requirement was to give the parties notice of the reasons forming the court's decision and to preserve the reasoning for appellate review" and "concluded that those purposes would be

served just as well by explicit oral findings stated during the hearing and then transcribed and made part of the record. [Citation.] Accordingly, we concluded that where an oral pronouncement is explicit and sufficient to advise the parties of the court's reasoning, the statutory requirement of a written explanation will be satisfied. [Citation.] We believe that rationale applies with equal force here."); see also *People v. Porter*, 122 Ill. 2d 64, 82-83 (1988) (purpose of written-findings requirement in summarily dismissing postconviction petition is to facilitate appellate review).

¶ 32     We emphasize that it is only due to the specificity and thoroughness of the trial court's oral findings regarding alternatives to detention, later transcribed, that the written-order requirement of the statute was satisfied here. The oral findings on conditions were more detailed than what we often see in these cases. We strongly encourage trial courts to provide extensive written findings, the lack of which will typically result in reversal. See, *e.g.*, *People v. Rivas*, 2024 IL App (1st) 232364-U, ¶ 25 (trial court gave no written finding whatsoever and record did not disclose oral findings regarding conditions, either); *Castillo*, 2024 IL App (1st) 232315, ¶ 32 (though agreeing that transcript of extensive oral findings could satisfy written-findings requirement, reversing detention order because trial court provided neither extensive written nor oral findings); *Staake*, 2024 IL App (4th) 231420-U, ¶ 20 (same).

¶ 33     The trial court here clearly considered alternatives to detention and discussed them at length at the hearing. The transcribed oral ruling provided a more than sufficient basis for appellate review and explained to defendant the court's reasoning. It would not serve the ends of justice to remand this matter simply so the trial court could produce a written motion that mirrored its thorough oral ruling.

¶ 34     Finding no error in the trial court's judgment, we affirm.

¶ 35     Affirmed.

*People v. Vance*, 2024 IL App (1st) 232503

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-MC-1115108; the Hon. Barbara Dawkins, Judge, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Jeffe Yang, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Joseph Alexander, Assistant State's Attorney, of counsel), for the People. |