2024 IL App (1st) 240652-U

FIFTH DIVISION
May 23, 2024

No. 1-24-0652B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 1144901 |
| | ) | |
| RAYMOND GREER, | ) | Honorable |
| | ) | Tiana Blakely, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**O R D E R**

¶ 1    *Held*: The circuit court's order granting the State's petition for pretrial detention and denying Mr. Greer's motion for release is affirmed. The circuit court's finding that State met its burden of showing that Mr. Greer posed a real and present threat to the safety of the community was not against the manifest weight of the evidence, it was not an abuse of discretion to conclude that no conditions would mitigate the real and present threat to the safety of individuals or the community that would result from Mr. Greer's pretrial release, and the court did not err in its weighing of the mitigating effect of Mr. Greer's medical condition.

¶ 2    Raymond Greer appeals from the circuit court's order granting the State's petition to deny him pretrial release under the dangerousness standard set out in section 110-6.1 of the Code of

Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022), as amended by Public Act 101-652, § 10-255, and Public Act 102-1104, § 70 (eff. Jan. 1, 2023)), commonly known as the Pretrial Fairness Act. For the reasons that follow, we affirm the court's order of detention.

¶ 3                                    I. BACKGROUND

¶ 4     The State has charged Mr. Greer with first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2022)), aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1)/(3)(C) (West 2022)), and possession of a firearm with a revoked firearm owner's identification (FOID) card (430 ILCS 65/2(a)(1) (West 2022), offenses arising out of an incident on September 19, 2022. Mr. Greer has been in custody since September 21, 2022. He was initially held on an order of no bond. When the amendments to section 110-6.1 of the Code took effect on September 18, 2023, however, Mr. Greer elected, pursuant to sections 110-5(e) and 110-7.5(b) of the Code (725 ILCS 5/110-5(e), 110-7.5(b) (West 2022)), to have his pretrial conditions reassessed under the new statutory requirements. See *People v. Rios*, 2023 IL App (5th) 230724, ¶ 16 (noting that "[u]nder sections 110-7.5(b) and 110-5(e), a defendant may file a motion seeking a hearing to have [his] pretrial conditions reviewed anew"). Mr. Greer filed his petition for pretrial release on October 12, 2023, and then filed an addendum to that petition on November 16, 2023. The State filed a petition seeking Mr. Greer's pretrial detention that on its face says it was filed on October 17, 2023, but that the record indicates was filed on December 13, 2023.

¶ 5     The State requested in its petition that Mr. Greer be detained until trial, arguing that he committed an eligible offense listed under section 110-6.1 of the Code and that he posed "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(a)(1.5), (e)(2) (West 2022). It further argued that no condition or combination of conditions set forth in section 110-10(b) of the Code could

mitigate that risk. *Id.* § 110-10(b).

¶ 6     Mr. Greer was present and represented by counsel at the hearing on the State's petition, which was held on the same day the State filed its petition. The State gave the following proffer in support of its petition.

¶ 7     On or about September 19, 2022, Mr. Greer was standing in front of the entrance to the Citgo gas station in Riverdale, Illinois at approximately 6:30 a.m., when he was approached by the victim, and they exchanged words. Mr. Greer left and returned wearing a dark hoodie. He then shot the victim in the head and continued to shoot multiple times while the victim was on the ground.

¶ 8     Multiple witnesses called the police, and the incident was captured on gas station surveillance cameras. The victim was pronounced dead at the scene. A witness named Jefferson positively identified Mr. Greer as the person who shot the victim. Mr. Greer was captured on his neighbor's doorbell camera entering his property via the rear fence at approximately 6:30 a.m. wearing the same dark clothing.

¶ 9     Detectives conducted a bloodhound search of the area, and the bloodhounds led them to the rear entrance of Mr. Greer's property. Officers secured warrants before entering Mr. Greer's residence. After a brief standoff, Mr. Greer surrendered to the police. A search of his house revealed a sweatshirt and shoes that matched the clothing seen on the surveillance cameras. A gun was recovered that appeared to be missing approximately five rounds.

¶ 10     Mr. Greer's mother was present when Mr. Greer was arrested and identified still video shots of Mr. Greer inside the gas station store prior to the homicide. Another witness named Smith said that he was sitting next to the victim when he was killed.

¶ 11     The State told the circuit court that Mr. Greer was on bond for an arson case when these

events occurred. The proffered evidence in the arson case was that on April 17, 2022, a neighbor called 911 because Mr. Greer set fire to her garage. Mr. Greer's counsel objected to the State describing the underlying facts of the arson case, but the court overruled that objection.

¶ 12    Mr. Greer's only other criminal history was a Class A misdemeanor of resisting a peace office, for which he received a one-day sentence.

¶ 13    The defense's response was that Mr. Greer could live with his sister who owned a house in Blue Island where she had lived for fifteen years and that his mother would live there and offer support. Defense counsel explained to the court that Mr. Greer suffered from Crohn's disease and that he had fourteen hospitalizations in the little over a year that he had been in Cook County Jail. Counsel told the court that the disease caused Mr. Greer a great deal of pain and discomfort, caused him to vomit, and could result in a perforated bowel, a potentially life-threatening complication. Counsel explained that Mr. Greer was not getting adequate treatment while in Cook County Jail because jail personnel were not always able to transport him for treatment. Counsel stated that Mr. Greer suffered from an obstructed bowel that would require surgery followed by a colostomy bag, and it would be very risky to have that surgery and wear that bag while he was in jail because of possible attacks from other detainees and other risks. Defense counsel asked the court to release Mr. Greer with electronic monitoring so that Mr. Greer could be treated at his "attending hospital" and live with his sister in Blue Island.

¶ 14    The State, in response, pointed out that Mr. Greer had refused thus far to have the recommended surgery for his bowel obstruction and that Mr. Greer had left hospitalizations on multiple occasions against medical advice. Defense counsel again explained that Mr. Greer did not want to have the surgery while he was at Cook County Jail because of a concern that it would not be safe.

¶ 15    The circuit court found that the State had shown by clear and convincing evidence that the proof was evident or the presumption great that Mr. Greer had committed a qualifying offense and posed a real and present threat to the safety of the community. The court also found that no conditions could mitigate this risk, relying particularly on the fact that Mr. Greer was on bond for another crime when he committed this offense. While the circuit court empathized with Mr. Greer's health condition, it noted that defense counsel had not shown that he could not be cared for at Cook County Jail. The court agreed with the State that it appeared that Mr. Greer "just wants to use this as a reason to be released from custody."

¶ 16                                    II. JURISDICTION

¶ 17    The circuit court entered its order granting the State's petition for pretrial detention on March 12, 2024, and Mr. Greer filed a timely notice of appeal from that order on March 26, 2024. We have jurisdiction over this appeal under section 110-6.1(j) of the Code (725 ILCS 5/110-6.1(j) (West 2022)) and Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), governing appeals from orders denying the pretrial release of a criminal defendant.

¶ 18                                    III. ANALYSIS

¶ 19    Mr. Greer has elected to stand on his detailed notice of appeal. He filed a notice in lieu of a memorandum that raised one additional argument. The State has filed a memorandum in response.

¶ 20    Section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) provides that "[a]ll defendants shall be presumed eligible for pretrial release." The State must seek pretrial detention by filing a timely, verified petition. *Id.* § 110-6.1(a), (c). To obtain that relief, the State must prove by clear and convincing evidence (1) that "the proof is evident or the presumption great" that the defendant committed a qualifying offense, (2) that the defendant "poses a real and present threat

5

to the safety of any person or persons or the community" (the dangerousness standard), and (3) that "no condition or combination of conditions" set forth in section 110-10(b) of the Code can mitigate the "defendant's willful flight" or the real and present threat to the safety of the community based on the specific articulable facts of the case. *Id*. §§ 110-6.1(e)(1)-(3), 110-10(b). Either side "may present evidence *** by way of proffer based upon reliable evidence." *Id.* § 110-6.1(f)(2).

¶ 21   Section 110-6.1 of the Code does not establish a standard of review for orders granting, denying, or setting conditions of pretrial release. We typically afford great deference to the circuit court's factual findings, however, and will reverse them only if they are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18. This is the standard we now apply to the court's findings that Mr. Greer committed the alleged offense and that the State met its burden of proof on the dangerousness standard.

¶ 22   As to the court's decision regarding whether there are any conditions of release that could mitigate that risk, we believe an abuse of discretion standard is most appropriate. Courts are "endowed with considerable discretion" where, as here, they are called upon to weigh and balance a multitude of factors and arrive at a decision that promotes not only "principles of fundamental fairness" but "sensible and effective judicial administration." *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504, 508 (2003) (noting that this is the standard of review when a court rules on a *forum non conveniens* motion). Abuse of discretion is also the standard we have historically used to review bail appeals under Rule 604(c)(1). *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10. "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted by the [circuit] court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 23    Here, Mr. Greer asserts that the State failed to meet its burden of demonstrating by clear and convincing evidence that (1) Mr. Greer posed a real and present threat to the safety of the community based on the specific articulable facts of the case and (2) no condition or combination of conditions could mitigate that threat. Mr. Greer also contends that the circuit court failed to properly weigh the mitigating effect of his medical condition and need for treatment. In his notice in lieu of a memorandum, Mr. Greer additionally argues that the court did not explain its reasoning in a written order.

¶ 24    We cannot say that it was against the manifest weight of the evidence to consider Mr. Greer a present threat to the safety of the community based on the specific articulable facts of this case. Mr. Greer has also not convinced us that the circuit court abused its discretion in denying him release with electronic monitoring. As the circuit court noted, Mr. Greer was released on bond in his arson case and failed to follow the conditions of his release, as he was arrested for murder while awaiting trial in that case.

¶ 25    The court did expressly consider Mr. Greer's medical condition, noting that the Cook County Department of Corrections has dealt with chronic illnesses before and that it had been presented with no evidence that it could not address Mr. Greer's medical condition. The circuit court also noted that Mr. Greer had a history of non-compliance with medical advice and refusing the surgery that he told the circuit court he would obtain if released.

¶ 26    While Mr. Greer is correct that the circuit court did not use the form written order that provides room to explain the reasons for each aspect of the court's ruling on a petition for pretrial detention, this does not alone require us to reverse.  As the State points out, the circuit court did enter a written order remanding Mr. Greer to custody and explained on the record the reasons for its decision. While the Pretrial Fairness Act requires the circuit court to make written findings, 725

7

ILCS 5/110-6.1(h)(1), we have recognized that this requirement can be met by detailed oral findings, such as the ones made by the circuit court in this case. As we noted in *People v. Vance*, 2024 IL App (1st) 232503, ¶ 29:

> "A recent line of case law has indicated that the court's oral ruling, if reduced to writing in a transcript of proceedings (as is typical), should be considered along with the written order and may suffice, by itself, to satisfy the written-findings requirement as long as the oral findings are explicit and individualized, thus explaining to defendant the basis for detention and providing sufficient detail for meaningful appellate review."

The circuit court's statements on the record in this case, reduced to writing in the transcript of proceedings, satisfied the requirement in section 110-6.1(h)(1) of the Code that the court make a written finding summarizing its reasons for denying pretrial release.

¶ 27                               IV. CONCLUSION

¶ 28     For the above reasons, we affirm the circuit court's orders granting the State's petition for pretrial detention. Pursuant to Illinois Supreme Court Rule 613(d) (eff. April 15, 2024), the mandate in this case shall issue within five court days after the entry of this judgment.

¶ 29     Affirmed.