2025 IL App (1st) 242603

No. 1-24-2603B

April 15, 2025

FIFTH DIVISION

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | 24 CR 775901. |
| v. | ) | |
| | ) | The Honorable |
| JOSEPH LANIER, | ) | Laura Ayala-Gonzalez, and |
| | ) | Shauna Boliker, |
| Defendant-Appellant. | ) | Judges, presiding. |

_____
_____


JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion
Presiding Justice Mikva and Justice Navarro concurred in the judgment and opinion.

### OPINION

¶ 1        Defendant-appellant Joseph Lanier, by and through the Cook County Public

Defender's Office, brings this appeal challenging the trial court's order, entered December 17,

2024. The order denied defendant's "motion for relief" made pursuant to Illinois Supreme

Court Rule 604(h) (eff. Apr. 15, 2024). A motion for relief is "a prerequisite to appeal" (Ill. S.

Ct. R. 604(h)(2) (eff. Apr. 15, 2024)), under what is "commonly known as the Pretrial Fairness

Act."[1] *People v. Morgan*, 2025 IL 130626, ¶ 1. This type of motion asks the trial court to reconsider a prior denial of pretrial release. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024),

¶ 2        Under case number 24-CR-775901, defendant was charged with (1) armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2022)), (2) unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)), and (3) aggravated unlawful use of a weapon by a person with a prior felony conviction (720 ILCS 5/24-1.6(a)(1), (d)(3) (West 2022)).

¶ 3        For the following reasons, we affirm the trial court's order denying defendant's motion for relief and affirm the denial of pretrial release.

¶ 4                          BACKGROUND

¶ 5        The State filed a one-page petition for pretrial detention on July 10, 2024, based on dangerousness. The petition alleged that defendant "poses a real and present threat to the safety" of persons or the community, because he "was in possession of a loaded firearm while being a multiple time convicted felon." The appellate record contains transcripts for four pretrial release hearings.[2] Since the parties at the hearings both incorporated and expanded on points made at prior hearings and since our standard of review of the evidence presented is *de novo* (*infra* ¶¶ 51-53), we describe the various hearings below.

¶ 6                          I. July 10, 2024, Hearing

---

[1]In 2021, the General Assembly passed two separate acts that "dismantled and rebuilt Illinois's statutory framework for the pretrial release of criminal defendants." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 (discussing Pub. Acts 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023) (amending 725 ILCS 5/art. 110)).

[2]The first hearing on July 10, 2024, was before Judge Shauna Boliker. The next three hearings were before Judge Laura Ayala-Gonzalez. Similarly, while defendant was represented by a different assistant public defender at the first hearing, he was represented by the same assistant public defender at the subsequent three hearings.

¶ 7        At the first hearing on July 10, 2024, defendant appeared in person, represented by the Cook County Public Defender's Office, and the State made the following proffer.

¶ 8                              A. State's Proffer and Argument

¶ 9                              1. The Present Offense

¶ 10        With respect to the underlying facts of the present charges, the State alleged that on July 9, 2024, police officers observed defendant standing in the middle of the street wearing a white tank top and a red backpack with black straps. The backpack appeared to be heavily weighted. Defendant looked in the officers' direction and fled, with police giving chase. Although police lost sight of defendant briefly, they heard defendant running uphill, through shrubs and bushes, toward the train tracks. One officer observed the movement of the bushes and shrubs leading up to the tracks and continued the chase on foot, while the two other officers moved their squad car to the viaduct by the train tracks. The officers then saw defendant emerge from the bushes while taking his tank top off. Defendant subsequently crossed the street and sat down. When police approached, defendant appeared out of breath, sweaty, and muddy.

¶ 11        The State further alleged that, while officers detained defendant, other police units canvassed defendant's flight path. Officers found the red backpack across the tracks at the bottom of the hill and near the bushes that defendant had been seen emerging from. This appeared to be the same red backpack with black straps that defendant had previously been seen wearing, From the backpack, police recovered a loaded Glock 9-millimeter handgun, with a switch attachment that converted it to a fully automatic gun. After recovering the gun, police placed defendant in custody, and a custodial search of his person revealed two clear plastic Baggies with a white, rock-like substance of suspected cocaine in his right front pocket. The

police ascertained that defendant had neither a firearm owner's identification card nor a concealed carry license.

¶ 12                                2. Defendant's Prior Criminal History

¶ 13        With respect to defendant's criminal history, the State argued that defendant had three prior felonies.[3] The most recent felony was a 2020 conviction for unlawful use of a weapon by a felon, a Class 3 offense, for which he received six years with the Illinois Department of Corrections (IDOC). Defendant was discharged from parole on June 25, 2024, which was less than a month before the instant offense. Second, defendant had a 2014 conviction for unlawful use of a weapon by a felon, a Class 2 felony, for which he received 12 years with IDOC. Third, defendant had a 2010 conviction for burglary, a Class 2 felony, for which he received three years with IDOC.

¶ 14                                3. State's Argument

¶ 15        The State argued, first, that the proof was evident and the presumption great that defendant had committed the offense of armed habitual criminal, where officers observed him on the day before the hearing, at one in the afternoon, wearing a white tank top and a red backpack with a black strap; where defendant fled and officers followed, observing his path of flight; where officers recovered, in his path of flight, the red backpack which they had observed him previously wearing; where the backpack contained a loaded firearm; and where he had the requisite prior felony convictions.

¶ 16        Second, the State argued that defendant posed a real threat to the community, where the incident occurred in the middle of the afternoon in a residential community, and where

---

[3]At a subsequent hearing, the State noted that there was a fourth conviction in 2012 that the State chose not to argue, out of concern that the conviction might have occurred under a facially unconstitutional statute. *Infra* ¶ 33.

defendant's actions of running with and then discarding a backpack with a loaded and fully automatic firearm created a danger to all people in the vicinity, as well as to himself and the police officers. Further, defendant has three prior felony convictions and has been previously told that he is not to be in possession of a loaded firearm, which, in and of itself, is dangerous for a felon to be in possession of.

¶ 17 Third, the State argued that there was no condition or combination of conditions that could mitigate the risk that defendant poses, where defendant had been told repeatedly that he was not to be in possession of a gun, and yet he had a loaded firearm with an automatic switch. This incident occurred just two weeks after he had been released from parole for unlawful use of a weapon by a felon. As a result, the State did not believe that any condition or combination of conditions could mitigate the risk that defendant posed.

¶ 18 The State argued that, if defendant was placed on electronic monitoring, the sheriffs would know where he was but they would not know what he was doing or what he was in possession of, and he has shown, by his actions in this case, that he can illegally "get his hands on" a firearm, even as a three-time convicted felon who lacked the appropriate licenses. The State noted that the same problems that existed with electronic monitoring also existed with other forms of pretrial services. Further the State observed that, even with electronic monitoring, defendant would still be afforded hours of unrestricted movement within the community that would permit him to obtain an illegal gun.

¶ 19 Based on the facts alleged by the State, the trial court found probable cause and then the court heard defense counsel's argument against the State's petition for pretrial detention.

¶ 20 B. The Defense's Response

¶ 21 In response, defense counsel argued that the proof was not evident, nor the presumption great, that defendant committed the offense. Counsel argued, first, that while officers stated that they saw a heavily weighted backpack, they did not say that they saw the outline of an L-shaped object, and people carry heavy backpacks all the time. Second, counsel argued that flight, by itself, does not qualify as reasonable suspicion of a crime. Third, no gun was recovered on defendant's person. Fourth, police lost sight of defendant during his run. Fifth, there were no admissions by defendant, and no evidence, even if he had been in possession of the backpack, that he knew a firearm was in it.[4]

¶ 22 Defense counsel argued that defendant did not pose a threat, where there was no "ShotSpotter notification," where police did not observe defendant brandishing a gun or pointing it at anyone, and where he made no threats to police or other citizens. Counsel argued that, although defendant was a felon, the State could not point to a specific, articulable threat that defendant posed. In addition, defendant had mitigating life circumstances that lessened any risk, such as his regular church attendance, the fact that he lived with his mother, that he was about to become a father, and that his two brothers were in court. Counsel noted that defendant had attended school through the eleventh grade and that he helped in the community at a local church and at a local park.

¶ 23 Defense counsel noted that pretrial services recommended pretrial monitoring. The pretrial officer, who was in attendance, stated that on the "new activity scale," defendant was a three, that on the "failure to appear scale," he was a two, and that defendant's "PSA score coincides with monitoring, supervision." Defense counsel further argued that the 32-year-old

_____

[4]This assertion overlooks the fact that the backpack was heavily weighted with the gun and switch.

defendant had no prior violent convictions. Counsel argued that defendant had never been arrested for a violent offense[5] and that he had never failed to appear.[6] Counsel asked the court to place defendant on electric monitoring with a curfew. After the defense finished, the State rested on its prior argument.

¶ 24                                      C. The Trial Court's Ruling

¶ 25        The trial court gave a detailed ruling, covering six pages of transcript, that we will try to summarize here. First, the court found that the State had satisfied its burden to show by clear and convincing evidence that defendant had committed the offense of armed habitual criminal, first, in light of defendant's undisputed criminal history. The court noted that the officers had observed defendant with a heavily weighted backpack, that the backpack that they had observed him wearing was shortly found, and that it was found near the bushes that police had observed defendant coming out of.

¶ 26        Second, the court found that defendant posed a danger, where defendant looked in the direction of the police and then ran, where the police lost sight of him for a period of time, where defendant discarded a highly dangerous weapon at a spot where a member of the public could have found it, where he had a criminal history, and where there was a very short period of time between his release on parole and this offense.

¶ 27        Third, the court found that there was no condition or combination of conditions that could mitigate the real and present threat that defendant posed to the community. The court noted "the mere several weeks that he has been off parole," and found there was no condition

---

[5]This statement was factually incorrect. At a subsequent hearing, the State noted that defendant had previously been arrested for aggravated discharge and attempted armed robbery, which was later reduced to unlawful use of a weapon, for his 2014 conviction. *Infra* ¶ 33.

[6]This statement was also factually incorrect. At a subsequent hearing, the State noted that defendant had one failure to appear, which occurred back in 2014. *Infra* ¶ 33.

that could prevent this defendant from possessing this highly dangerous type of weapon. The court stated that, even if the court imposed electronic monitoring, such monitoring would tell law enforcement where defendant was but not what he was doing or possessing.

¶ 28     For these reasons, the trial court granted the State's petition to detain defendant and the court informed defendant that he had the right to file a motion for relief. The matter was continued to July 16, 2024.

¶ 29                              II. August 21, 2024, Hearing

¶ 30     On August 21, 2024, defendant appeared before another judge, who informed defendant that defendant had been charged by way of information with three felonies. Defense counsel then made an oral motion to review defendant's detention.

¶ 31     Counsel argued that defendant, who was 32 years old, lived with his mother and had a child on the way, that he was currently enrolled in GED classes at a local college, and that he volunteered twice a week at church and volunteered three times a week at a park teaching dance. Counsel argued that this was a nonviolent offense, that defendant had never been convicted of a violent offense, and that he had never failed to appear.[7] With respect to this offense, counsel argued that the gun was recovered from a backpack found somewhere else but not from defendant. Counsel asked the court to release defendant on a 7 a.m. to 7 p.m. curfew or, in the alternative, on electronic home monitoring.

¶ 32     The State objected and repeated essentially the same facts and points that it had made at the earlier hearing, but it did note that defendant was standing with a group of other individuals when the police first observed him. In response, defense counsel argued that there were multiple other individuals around, that the backpack was not found on defendant, and that

---

[7]As already noted in footnote 6, this statement is factually incorrect.

counsel did not yet know whether anyone else was running because any body-cam footage had not yet been reviewed.

¶ 33    With respect to defendant's criminal history, the State observed (1) that defendant's most recent 2020 conviction of unlawful use of a weapon had been reduced down from an armed habitual criminal charge, (2) that his 2014 conviction for unlawful use of a weapon had been reduced down from aggravated discharge and attempted armed robbery, (3) that defendant had a 2012 Class 4 aggravated unlawful use of a weapon conviction "that may fall under Aguilar,"[8] and (4) that defendant had a 2010 burglary conviction. The State also noted that defendant had one prior failure to appear, which was in 2014.

¶ 34    The trial court ruled, after listening to both parties, that it would continue the prior pretrial detention order entered in July. Although the court listed its reasons, the reasons were similar to or the same as the reasons listed by the prior judge at the prior hearing. When finding that defendant posed a danger, the court noted, in particular, defendant's "lengthy gun history in Cook County" and the fact that this 32-year-old defendant had been given many opportunities by the court, as the reductions in charges showed.

¶ 35                                    III. December 3, 2024, Hearing

¶ 36    At the December 3, 2024, hearing, the same defense counsel who had appeared at the August 21, 2024, hearing again made an oral motion for pretrial release. Counsel noted that defendant had somewhere to stay, namely, with his mother, and that defendant had completed the coursework for a commercial driver's license. Counsel reiterated defendant's volunteer activities and again argued that defendant was charged with a nonviolent offense. Regarding

---

[8]In *People v. Aguilar*, 2013 IL 112116, ¶ 22, the Illinois Supreme Court held that the former "Class 4 form of" aggravated unlawful use "violates the right to keep and bear arms" under the second amendment (U.S. Const., amend. II).

the instant offense, counsel argued that the firearm was not found on defendant, that the officers did not have defendant in sight at all times, and that an officer had testified at the preliminary hearing that defendant was approximately 150 feet away from the police when first observed and was standing with three other people in the middle of the street.

¶ 37　　　　The State described basically the same set of facts that it had described twice before, except this time the State said that, when defendant looked in the officers' direction, he "became wide-eyed" and ran. The State also noted that defendant had one failure to appear, from 2014, and that the precise time of the incident at issue here was 12:40 p.m.

¶ 38　　　　In rebuttal, defense counsel cited *People v. Martinez*, 2024 IL App (1st) 240241-U, ¶¶ 14-15, an unpublished order in which the appellate court held that the trial court erred in concluding that the *Martinez* defendant posed a threat. In *Martinez*, the defendant was a parolee who, during a traffic stop, was found in a car with a loaded 9-millimeter handgun. *Martinez*, 2024 IL App (1st) 240241-U, ¶ 4. However, all of the 44-year old defendant's prior convictions were committed when he was under 18 years old. *Martinez*, 2024 IL App (1st) 240241-U, ¶ 6. The appellate court found that, "in this case evidence of the charged offenses and the defendant's status as a parolee are not sufficient, standing alone, to support a finding" that the defendant posed a threat. *Martinez*, 2024 IL App (1st) 240241-U, ¶ 15.

¶ 39　　　　At the December 3, 2024, hearing, the trial court stated that it agreed with defense counsel's point "100 percent" that possession of a gun, in and of itself, is not violent. Distinguishing *Martinez*, the trial court replied that this, however, was allegedly defendant's fourth gun, after defendant was paroled "[n]ot even a month" before, and defendant was outside in the afternoon in a residential neighborhood. After reiterating its previously stated reasons, the trial court denied defense counsel's oral motion for pretrial release. The court informed

defendant that he had a right to file a motion to reconsider and, if that was denied, a right to appeal.

¶ 40                          IV. December 11, 2024, Motion for Relief

¶ 41         Following up on the trial court's admonition that he could file a motion for relief, defendant did just that. On December 11, 2024, less than a week after the third hearing, defendant filed a written motion titled "Motion for Relief Under the Pretrial Fairness Act."

¶ 42         Regarding the State's proof, defendant's written motion argued that the firearm was not found on defendant's person, that there was no forensic evidence linking the firearm to defendant, that police did not see defendant with a firearm, that there was no 911 report of a person with a firearm, and that, even if the State could link the heavy backpack to defendant, the State cannot prove that defendant knew what was in it. Next, the written motion argued that the court had conflated the two questions of whether defendant posed a threat and whether conditions could mitigate the threat. Regarding the threat issue, the motion argued that defendant was not seen with a firearm, that he never threatened anyone with it, and that having four gun cases and running from police does not prove he is a threat. Regarding conditions to mitigate any threat, the motion argued that the State offered only his prior criminal history, the current charges, and his flight from police.

¶ 43                          V. December 17, 2024, Hearing

¶ 44         On December 17, 2024, the trial court held its fourth hearing concerning pretrial detention. At the hearing, defense counsel reiterated the points made in the motion, but said she wanted to highlight a case cited in the motion, namely, *People v. Vance*, 2024 IL App (1st) 232503. Although the *Vance* court affirmed the trial court's denial of pretrial release, the appellate court stressed that "[d]angerousness and conditions are different factors and deserve

separate consideration." *Vance*, 2024 IL App (1st) 232503, ¶ 27. Finding the dangerousness element satisfied, the *Vance* court stated: "it is bad enough to possess a weapon that has been rigged to be fully automatic—meaning one press of the trigger unleashes a tirade of bullets in rapid succession," but in addition, the *Vance* defendant was driving a stolen vehicle. *Vance*, 2024 IL App (1st) 232503, ¶¶ 22, 27. The *Vance* court's remark about the gun's danger applies equally to the gun found in the case at bar.

¶ 45    In response, the State observed that there had been three prior detention hearings, and it repeated some of the various points that it had already made at prior hearings. The court also reiterated its reasons from past hearings. In particular, the court stressed that electronic monitoring would not suffice, where defendant had been told "each and every time" he was released that he could not have guns in his possession, and yet he "continued to defy by having more guns." Defendant's motion for relief was then denied, thereby satisfying a prerequisite for this appeal. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024).

¶ 46                                  VI. Notice of Appeal

¶ 47    On December 19, 2024, defendant filed a notice of appeal, which did not list reasons or grounds; however, the notice no longer has to do that, since Rule 604(h) has been amended to provide that "[t]he motion for relief will serve as the argument of the appellant on appeal." Ill. S. Ct. R.604(h)(7) (eff. Apr. 15, 2024). Similarly, "[i]ssues raised in the motion for relief are before the appellate court regardless of whether the [defendant's] optional [appellate] memorandum is filed." Ill. S. Ct. R.604(h)(7) (eff. Apr. 15, 2024). Defendant exercised his right under the amended Rule 604(h) to not file an appellate brief and to stand on the proceedings below. On the other hand, the State chose to file an optional appellate brief that

argued, among other things, that this court should exercise *de novo* review and that defendant's arguments fail on their merits.

¶ 48                                                    ANALYSIS

¶ 49          For the following reasons, we agree with the State that we should exercise *de novo* review and that defendant's arguments fail on their merits. Thus, we affirm the trial court's denial of defendant's motion for relief and denial of pretrial release.

¶ 50                                              I. Standard of Review

¶ 51          A little over a month ago, our supreme court held that,

"when live witness testimony is presented at a pretrial detention hearing, the circuit court's ultimate detention decision under section 110-6.1 [(725 ILCS 5/110-6.1 (West 2022))], in addition to any underlying factual findings supporting the decision, will not be disturbed on review unless found to be contrary to the manifest weight of the evidence." *Morgan*, 2025 IL 130626, ¶ 54.

¶ 52          However, "when the parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Morgan*, 2025 IL 130626, ¶ 54. The supreme court stated that *de novo* review means that the reviewing court "grant[s] no deference to the decision of the circuit court." *Morgan*, 2025 IL 130626, ¶ 22. The supreme court stressed that "the reviewing court stands in the same position as the circuit court." *Morgan*, 2025 IL 130626, ¶ 21.

¶ 53          In the case at bar, since no live witness testimony was presented, that State is correct that our standard of review is *de novo*.

¶ 54                                            II. The Three Questions

¶ 55        When a defendant has been charged with a detainable offense, and the State has filed a petition for pretrial detention, the court must "make a factual determination as to whether the State presented clear and convincing proof that (1) the defendant likely committed the detention-eligible offense, (2) the defendant is dangerous, and (3) no conditions could mitigate defendant's dangerousness or risk of flight." *Morgan*, 2025 IL 130626, ¶ 41; 725 ILCS 5/110-6.1(e) (West 2022). If the answer to these three questions is " 'yes,' the court may detain the defendant." *Morgan*, 2025 IL 130626, ¶ 41. All defendants are "presumed eligible for pretrial release," and so it is the State that bears the burden of overcoming this presumption. 725 ILCS 5/110-6.1(e) (West 2022).

¶ 56        To quote the statute, the State must show "by clear and convincing evidence": (1) that "the proof is evident or the presumption great that the defendant has committed" the charged offense; (2) that the defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case"; and (3) that "no condition or combination of conditions *** can mitigate" either the risk of the defendant's "real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" or the risk of his "willful flight." 725 ILCS 5/110-6.1(e) (West 2022). The court may consider a variety of factors in making a determination of dangerousness, which may include, but are not limited to, the nature and circumstances of the charged offense, the history and characteristics of the defendant, and "[w]hether the defendant is known to possess or have access to any weapon or weapons." 725 ILCS 5/110-6.1(g)(1), (2), (7) (West 2022). Now that we must undertake the same review as the trial court, these statutory requirements and factors apply equally to the appellate court.

¶ 57     To satisfy its burden, the State "may present evidence at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2022); *Morgan*, 2025 IL 130626, ¶ 26. Similarly, the defendant may counter with evidence by way of proffer. 725 ILCS 5/110-6.1(f)(2) (West 2022).

¶ 58                                   III. The Charges

¶ 59     Since we must evaluate whether the proof is evident and the presumption great whether defendant committed the charged offenses, we provide the relevant statutes below.

¶ 60     The armed habitual criminal statute, under which defendant was charged, was amended, effective January 1, 2025, to become "[u]nlawful possession of a firearm by a repeat felony offender." Pub. Act 103-822, § 20 (eff. Jan. 1, 2025) (amending 720 ILCS 5/24-1.7). Although the name has changed, the elements of the offense have not. A person is guilty of this offense "if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of any combination" of certain offenses. Pub. Act 103-822, § 20 (eff. Jan. 1, 2025); 720 ILCS 5/24-1.7(a) (West 2022). There is no dispute on this appeal that defendant was convicted of the requisite prior offenses. However, he does challenge whether he received, sold, possessed or transferred a firearm.

¶ 61     The unlawful possession of a weapon by a felon statute, under which defendant was charged, was also amended effective January 1, 2025, to change it from "[u]nlawful use or possession" to simply "[u]nlawful possession." 720 ILCS 5/24-1.1 (West 2022); Pub. Act 103-822, § 20 (eff. Jan. 1, 2025) (amending 720 ILCS 5/24-1.1). Other than that minor word change, the offense is the same. 720 ILCS 5/24-1.1 (West 2022); Pub. Act 103-822, § 20 (eff. Jan. 1, 2025). A person is guilty of this offense if he or she knowingly possesses on or about

his person any firearm if he or she has previously been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2022).

¶ 62    The aggravated unlawful use of a weapon by a person with a previous felony conviction statute (720 ILCS 5/24-1.6(a)(1), (d)(3) (West 2022)) under which defendant was charged was also amended effective January 1, 2025, to change it from "[a]ggravated unlawful use of a weapon" to "[a]ggravated unlawful possession of a weapon." 720 ILCS 5/24-1.6 (West 2022); Pub. Act 103-822, § 20 (eff. Jan. 1, 2025) (amending 720 ILCS 5/24-1.6). However, given defendant's other charges, which allege possession, this change does not affect our analysis.

¶ 63                    IV. The Three Answers

¶ 64    By examining each of the three questions in a separate section below, we hope to alleviate defendant's repeatedly expressed concern about possibly conflating questions. *Supra* ¶¶ 42, 44.

¶ 65                        A. Proof Evident

¶ 66    First, exercising *de novo* review, we find that the State tendered proffers at the hearings that established "by clear and convincing evidence" that "the proof is evident or the presumption great that the defendant has committed" the charged offenses (725 ILCS 5/110-6.1(e) (West 2022)) of armed habitual criminal (720 ILCS 5/24-1.7 (West 2022)) and aggravated unlawful use of a weapon by a person with a previous felony conviction (720 ILCS 5/24-1.6 (West 2022)). We explain more fully below.

¶ 67                1. Requisite Firearm and Prior Convictions

¶ 68    Both charges require certain prior convictions. However, the State proffered evidence of those convictions, and defendant did not challenge this point at any of the detention hearings. Therefore, for purposes of today's review, this point is satisfied. Both charges also require a

firearm. Again, the State proffered information about a firearm, and defendant did not argue at any detention hearing that it was not a qualifying firearm, so this point is also satisfied for purposes of our detention review.

¶ 69                                                                2. Possession

¶ 70                    The dispute regarding this first question centers on possession, an element of both offenses.[9] For the following reasons, we find the State's proffers established "by clear and convincing evidence" that "the proof is evident or the presumption great that" defendant possessed the charged firearm. 725 ILCS 5/110-6.1(e) (West 2022). However, we must hasten to add that this finding has no effect, whatsoever, at what might later be proven at a trial and found by a fact finder.

¶ 71                    First, officers saw defendant with the distinctively colored backpack, in which the gun was shortly found. Second, the backpack was heavily weighted. This fact tends to negate defendant's argument that he had no idea what was in it. While people do carry heavy backpacks all the time as defendant argues, most people are also aware of what is making their backpack so heavy. Third, when he saw the officers, his eyes opened wide, he ran, and he quickly discarded the backpack. While one could argue that he ran because he had cocaine in his pocket or that he was just generally wary of police, that argument does not undercut the fact that he immediately discarded the backpack. He was more worried about ditching the pack than ditching the cocaine in his pocket; this suggests he knew what was in it. Fourth, while police did briefly lose sight of defendant as defendant argues, the police quickly canvassed his

---

[9]Although a person is guilty under the armed habitual criminal statute "if he or she receives, sells, possesses, or transfers any firearm after having been convicted" two or more times of certain offenses (720 ILCS 5/24-1.7(a) (West 2022)), it is the "possesses" element that the State has argued at the detention hearings, and so we do not consider the other options.

flight path and recovered the backpack near the bushes where they had seen defendant emerging from. Fifth, while defendant argues that three other individuals were standing with defendant and, thus, in the vicinity, it was defendant who police saw with the backpack and so the presumption is great that he was the one who discarded it. Sixth, while defendant argues that police were approximately 150 feet away when they observed defendant with the backpack, a heavily weighted backpack is not a tiny item. Also, it was 12:40 p.m. in the middle of a July day when there was presumably daylight illuminating the scene. For all these reasons, we find that the proof is evident and the presumption great that defendant possessed the charged firearm.

¶ 72                                      B. Dangerousness

¶ 73          Next, exercising *de novo* review, we find that the State tendered proffers at the hearings that established "by clear and convincing evidence" that the defendant "poses a real and present threat to the safety of *** the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e) (West 2022).

¶ 74          Defendant argues that he had mitigating life circumstances, such as the fact that he was soon to become a father, he lived with his mother, his brothers were in court, he regularly attended church and volunteered at a local park, and he completed the coursework for a commercial driver's license. However, the government did not seek detention due to risk of flight.

¶ 75          Defendant argues that the police did not observe him brandishing the gun or pointing it at anyone or making threats and that the police were not responding to a report of shots fired. However, a person does not have to be an active shooter to be dangerous for the purposes of pretrial detention.

¶ 76    We find dangerousness on the proffered facts where, first, this was not any loaded gun but one with a switch attachment that converted it to a fully automatic gun. "[A] weapon that has been rigged to be fully automatic" means that "one press of the trigger unleashes a tirade of bullets in rapid succession." *Vance*, 2024 IL App (1st) 232503, ¶ 22. As President Reagan once famously remarked, " 'a machine gun[ ] is not a sporting weapon or needed for the defense of a home.' " Jeff Wilson, *Reagan's 78th Birthday Includes Posh Party, Campus Speech, Courtesy Call*, AP News (Feb. 7, 1989), https://web.archive.org/web/20220501172132/https://apnews.com/article/2792a3c920c27eaebb4109a1a1dfddec [https://perma.cc/U5C5-XJQ6?type=image].[10] Second, this particularly dangerous and loaded gun was discarded in the middle of a summer day in, what everyone agrees, was a residential neighborhood. Third, the governing statute specifically provides that, "in making a determination of dangerousness," we may consider "[w]hether the defendant is known to possess or have access to any weapon or weapons." 725 ILCS 5/110-6.1(g) (West 2022). Defendant's easy access to, and recurrent possession of, firearms is established by his repeated gun convictions. For all these reasons, we find that the State's proffers established dangerousness by clear and convincing evidence.

¶ 77                    C. No Conditions

¶ 78    Finally, exercising *de novo* review, we find that the State tendered proffers at the hearings that established "by clear and convincing evidence" that "no condition or combination of conditions *** can mitigate" the risk of the defendant's "real and present threat to the safety

---

[10]This quote was from a speech to students at the University of Southern California in 1989. See *User Clip: 1989 Reagan-"I Do Believe That an AK-47, a Machine Gun, Is Not a Sporting Weapon or Needed for Defense of a Home."*, C-SPAN (Feb. 6, 1989), https://www.c-span.org/clip/public-affairs-event/user-clip-1989-reagan-i-do-believe-that-an-ak-47-a-machine-gun-is-not-a-sporting-weapon-or-needed-for-defense-of-a-home/5087431.

of *** the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e) (West 2022).

¶ 79 We agree with the trial court that there is no condition or combination of conditions that could prevent defendant from possessing this highly dangerous type of weapon. Just two weeks after being released from parole on a gun conviction, defendant was arrested again in this case, facing additional gun charges. Defendant has been told numerous times by different judges that he is not to possess guns and yet that has not stopped him, nor has his lengthy history of gun convictions and lack of licenses hindered his access. He has repeatedly demonstrated his ability to illegally obtain guns. Electronic monitoring and curfews might tell the sheriff's office where he is but not what he is doing or what he possesses. This offense occurred in the middle of the day, showing that the 7 a.m. to 7 p.m. curfew suggested by his counsel would have no effect.

¶ 80 Having considered all three questions separately and independently, we find that the answer to all three is "yes." See *Morgan*, 2025 IL 130626, ¶ 41 (if the answer to these three questions is " 'yes,' the court may detain the defendant")

¶ 81 CONCLUSION

¶ 82 For all the foregoing reasons, and having conducted a thorough and *de novo* review of the record before us, we affirm the trial court's order denying defendant's motion for relief and affirm its denial of pretrial detention.

¶ 83 Affirmed.

*People v. Lanier*, 2025 IL App (1st) 242603

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-CR-775901; the Hon. Laura Ayala-Gonzalez and the Hon. Shauna Boliker, Judges, presiding. |
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Claudia V. Bertacchi, Assistant Public Defender, of counsel), for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (Andrea V. Salone, Assistant State's Attorney, of counsel), for the People. |