2025 IL App (3d) 250262

Opinion filed August 28, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | Appeal No. 3-25-0262 |
| v. | ) ) ) | Circuit No. 25-CF-508 |
| AARON RICE, | ) ) | Honorable Arkadiusz Z. Smigielski, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Justices Peterson and Davenport concurred in the judgment and opinion.

_____

**OPINION**

¶ 1     The State appeals from the order of the Will County circuit court releasing defendant, Aaron Rice, arguing the court erred in (1) revisiting another judge's detention findings absent a motion for relief and (2) releasing defendant. We affirm.

¶ 2                         I. BACKGROUND

¶ 3     On March 9, 2025, defendant was charged with aggravated cruelty to animals (Class 4 felony) (510 ILCS 70/3.02(a), (c) (West 2024)), cruelty to animals (Class A misdemeanor) (*id.* § 3.01(a), (d)), and 15 counts of violating owner's duties (Class B misdemeanor) (*id.* § 3(a), (d)). The State filed a verified petition to deny pretrial release, setting forth that aggravated animal

cruelty was a detainable offense and arguing that defendant's release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(6.5)(A) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(6.5)(A) (West 2024)).

¶ 4		The factual basis provided that defendant had a contract with Leah Sayad, the owner of a Great Dane named Freya, to provide a four-week training course. Defendant picked Freya up on January 23, 2025. Over the next eight days, Sayad texted defendant multiple times asking for an update and photographs. Defendant never sent any photographs and only responded that Freya was doing fine. On January 31, 2025, defendant contacted Sayad and told her to meet him at the animal hospital because Freya was not eating and was having difficulty standing. Freya had multiple injuries/wounds that were depicted in photographs attached to the petition. Sayad indicated that Freya did not have those injuries and was not as thin prior to her time with defendant. "Veterinarians indicated that Freya could not have lost that much weight unless she was starved in that 8 day period and the injuries called skin necrosis could not have occurred unless Freya was kept in a cage or confined area that was too small for her for a significant amount of time."

¶ 5		A search warrant was obtained for defendant's residence. Upon execution of the warrant, officers located 19 other dogs in cages in the home. Immediately upon entering the home, officers smelled a strong odor of urine, feces, and ammonia. There was brown sludge covering the walls and floors. The cages contained feces; urine; and no food, water, or bedding for the dogs. Officers located a dog that had given birth to five puppies four or five days prior. The puppies were in the early stages of suffering from pressure sores from being kept in a small or confined space. One dog was wearing a shock collar that was on so tight that the dog's neck was swollen around the collar, and there was a significant indent on its neck once the collar was cut off.

2

¶ 6    A hearing was held on March 27, 2025. The State provided the above factual basis and argued that this was not a one-time occurrence. Defense counsel argued that it was not clear that defendant committed the offense, *i.e.*, that Freya was a Great Dane that had bitten other dogs and had been rejected by other trainers, was high-strung and under stress, and refused to eat the food that was provided. Counsel further argued that defendant had been honorably discharged from the military after multiple tours of duty over 14 years and would obey any court orders. Defendant had no criminal history, and there were less restrictive means available. Counsel noted that defendant was living with his girlfriend who had a 15-year-old pit bull, but defendant was not caring for the animal and would not train any animals if ordered by the court. The State countered that home monitoring was insufficient, noting it was unreasonable "to force [defendant's girlfriend] to give up her dog that she's had for 15 or 16 years." The court found the State met its burden by clear and convincing evidence and detained defendant.

¶ 7    A subsequent hearing was held on April 10, 2025, in front of a different judge. Defense counsel argued that there was no indication that any person or persons were endangered by defendant's conduct. Moreover, counsel noted that defendant's girlfriend had rehomed her dog and there were no animals at her residence. Thus, counsel argued that defendant could comply with a condition to stay away from animals. The State argued that defendant did not present a change of circumstances. In reaching its decision, the court stated that the legislature indicated that a person could be detained for an offense involving cruelty to animals, but it did not believe that the finding that a defendant posed a threat to the safety of any person, persons, or the community applied to "nonhuman beings." The court released defendant on electronic monitoring with the condition that he "have no contact with any animal of any kind."

¶ 8    On April 24, 2025, the State filed a motion for relief, arguing the court erred by holding a new detention hearing, defendant did not show a change of circumstances, and the court misconstrued what was necessary for a finding of dangerousness. The court denied the motion after a hearing, noting that it did not hold a full detention hearing, as "[w]hat needs to be readdressed is whether detention is still proper in light of the circumstances that exist on the day of the subsequent hearing."

¶ 9                                    II. ANALYSIS

¶ 10   On appeal, the State contends the court erred by (1) revisiting the findings from the previous detention hearing where defendant did not file a motion for relief or show a change of circumstances and (2) releasing defendant with conditions. Where a pretrial detention hearing contains no live witness testimony, such as here, our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 11   Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2024). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense; (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk; and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(e). At each subsequent appearance of the defendant before the court, the statute requires the court to find only that "continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(i-5).

4

"Although this determination necessarily entails consideration of the threat or flight risk posed by a defendant and the potential mitigation of such threat or flight risk by conditions of release, the Code does not require the court to again make specific findings that the State proved the three propositions by clear and convincing evidence as required at the initial hearing." *People v. Mulbrandon Casey*, 2024 IL App (3d) 230568, ¶ 13.

¶ 12 Initially, we agree with the circuit court that it did not conduct "a full-blown detention hearing" as the State alleges but rather conducted a subsequent hearing as required by section 110-6.1(i-5). At each appearance following a decision to detain, the court is required to determine whether continued detention is necessary to avoid a real and present threat. 725 ILCS 5/110-2(a), 110-6.1(i-5) (West 2024). There is no requirement that a defendant file a motion for relief in order for this to apply. Rather, a motion for relief serves as the prerequisite for appealing a detention decision order, not for the court to determine whether continued detention is necessary. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Nor does the statute require a change of circumstances to revisit detention, as a determination on the necessity of continued detention is *required* at every subsequent court date. To the extent other decisions of the appellate court have concluded that a change in circumstances is necessary to revisit the threat/continued detention question (see, *e.g.*, *People v. Thomas*, 2024 IL App (1st) 240479, ¶¶ 14, 16), we disagree in that this engrafts an additional condition at odds with the plain language of section 110-6.1(i-5). Of course, here it must be observed that defendant did show a highly relevant change in circumstances—his girlfriend, whom he was to reside with, had rehomed her dog.

¶ 13 Turning to the merits, we find the court did not err in releasing defendant by finding that continued detention was not necessary. While the court found that the threat to animals defendant

5

posed was not the type of threat contemplated by the statute, we need not reach this issue, as our review is *de novo* and we can affirm for any reason in the record (*People v. Reed*, 361 Ill. App. 3d 995, 1000 (2005)). Defendant was an honorably discharged veteran with no criminal record or history of noncompliance with court orders. While there was a concern about defendant being around his girlfriend's pit bull, by the subsequent hearing his girlfriend had rehomed her dog. There was no indication that he had access to other animals or that he posed any additional threat. Therefore, the conditions placed upon defendant, including electronic monitoring and no contact with animals, were sufficient to avoid any threat he posed, such that continued detention was not necessary.

¶ 14                                                    III. CONCLUSION

¶ 15          The judgment of the circuit court of Will County is affirmed.

¶ 16          Affirmed.

*People v. Rice*, 2025 IL App (3d) 250262

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 25-CF-508; the Hon. Arkadiusz Z. Smigielski, Judge, presiding. |
| **Attorneys for Appellant:** | Patrick Delfino, David J. Robinson, and Luke McNeill, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Carolyn R. Klarquist, and Abigail Hogan Elmer, of State Appellate Defender's Office, of Chicago, for appellee. |