2026 IL App (1st) 252509-U

FIFTH DIVISION
March 13, 2026

No. 1-25-2509B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | No. 25 C 550654 |
| v. | ) ) | |
| DAVION ROSE-WATKINS, | ) ) ) | Honorable Shauna L. Boliker and Margaret M. Ogarek, |
| Defendant-Appellant. | ) | Judges Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Oden Johnson concurred.

**O R D E R**

¶ 1    *Held*: We affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 2    Defendant Davion Rose-Watkins appeals from the circuit court's order granting the State's petition to detain him before trial pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (Pub. Act 104-417, § 1075 (eff. Aug. 15, 2025) (amending 725 ILCS 5/110-6.1)), commonly known as the Pretrial Fairness Act. In the petition for relief he filed in the circuit court, which constitutes his argument on appeal, he asserted that the State failed to show that conditions

of pretrial release could not mitigate the danger that he posed to the community. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On August 16, 2025, the State charged Mr. Rose-Watkins by a two-count felony complaint with aggravated unlawful use of a weapon (AUUW) for carrying on his person and in a vehicle a loaded, uncased "ghost gun" without a valid Firearm Owners Identification (FOID) card or concealed carry license (CCL) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C) (West 2024)). The AUUW statute mandates a term of imprisonment where the factors listed in both subsections (a)(3)(A-5) and (a)(3)(C) are present (*id.* § 24-1.6(d)(2)), making this a detainable offense. See Pub. Act 104-417, § 1075 (eff. Aug. 15, 2025) (amending 725 ILCS 5/110-6.1(a)(6)(O)(ii)) (a defendant may be denied pretrial release where he is charged with a non-probationable violation of the AUUW statute). On the same day, the State petitioned for Mr. Rose-Watkins to be detained until trial, and Judge Shauna Boliker held a hearing on the petition.

¶ 5      At the hearing, the State proffered that, on August 15, 2025, police officers observed a gray SUV driving recklessly near a police station. Mr. Rose-Watkins sat in the rear driver's side seat of the SUV while another man drove, and a third man sat in the front passenger's seat. Officers followed the SUV in a police vehicle and activated their lights and sirens to stop it. The SUV did not stop, ran a stop sign, and traveled on the wrong side of the road before crashing into a parked, occupied vehicle. The SUV continued down the street and crashed again into a garage. All three men in the SUV then fled on foot and were detained by officers.

¶ 6      Officers searched the SUV and recovered three loaded firearms. One was on the front passenger seat, a second was on the front passenger floorboard, and a third, "a black polymer 80 unserialized handgun" with an extended magazine, was on the rear driver's side seat, where,

according to the officers, Mr. Rose-Watkins had been sitting. Following his arrest, Mr. Rose-Watkins stated, "that he fled from the police because he thought he could essentially outrun them." At the time of the incident, Mr. Rose-Watkins was under the age of 21 and did not possess a valid FOID card or CCL. He was also on pretrial release from a 2024 case in which he had also been charged with AUUW.

¶ 7     Defense counsel argued that Mr. Rose-Watkins would comply with conditions if released pending trial. He pointed out that, other than the arrest on this charge, he had not violated any conditions of pretrial release in his other case. Defense counsel further proffered that Mr. Rose-Watkins was 20 years old and a lifelong resident of the Chicago area, and that he had completed high school, participated in food drives at his church, and undergone "Com-Ed training." Defense counsel requested that the court release Mr. Rose-Watkins pending trial and, if necessary, "impose minimum conditions."

¶ 8     The court granted the State's petition for pretrial detention. The court found that the State established the proof was evident or presumption great that Mr. Rose-Watkins committed a detainable offense, that he posed a threat to the community, and that no conditions could mitigate that threat. The court stated it had considered his flight from the officers, his other pending case, and the nature of the weapon he allegedly possessed. The court emphasized that Mr. Rose-Watkins surely knew from his other pending case that he could not possess a gun.

¶ 9     On August 28, 2025, the State issued a superseding information charging Mr. Rose-Watkins with four counts of AUUW, including the detainable offense of possessing an uncased, loaded, immediately accessible firearm without a valid FOID card or CCL (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C); (d)(2) (West 2024); Pub. Act 104-417, § 1075 (eff. Aug.

15, 2025) (amending 725 ILCS 5/110-6.1(a)(6)(O)(ii))).

¶ 10    At a hearing before Judge Margaret Ogarek on September 11, 2025, the court arraigned Mr. Rose-Watkins on the charges in the information and ordered his continued detention. Mr. Rose-Watkins did not present any argument relating to his continued detention or new information showing that detention was no longer necessary.

¶ 11    On November 6, 2025, Mr. Rose-Watkins filed a "Petition for Relief." At the outset of the petition, he requested that the court reconsider his "continued detention." He argued that he was only 21 years old; he was born and raised in the Chicago area; the vast majority of his friends and family lived in the Chicago area; some family members had attended each court date since his arrest; if released, he would live in Chicago with his cousin; he had graduated from "Chicago Tech. Academy"; his father, with whom he had been very close, was murdered in 2020; and he had no felony convictions. He conceded that he was charged with four Class 4 felonies in his other pending case, which had been referred to the "RJCC" restorative justice program but was returned to the original judge following his arrest in this case. He concluded by requesting that the court "reconsider his detention and allow his release with any restrictions deemed appropriate."

¶ 12    The following day, Judge Ogarek held a hearing on the petition. Defense counsel noted the facts in the petition and requested that the court consider 24-hour house arrest with movement only by the court's approval. Counsel noted that the cousin with whom Mr. Rose-Watkins would live was present for the hearing. Counsel also stated that the judge overseeing Mr. Rose-Watkins's other case had not revoked his pretrial release in that case.

¶ 13    The court denied Mr. Rose-Watkins's petition. It stated that its "biggest concern" was whether any conditions of release could ensure the community's safety. The court emphasized that when he was arrested, he was already on pretrial release for a gun case and had therefore been

ordered not to possess any firearms. The court noted that he was "alleged to have engaged in very risky behavior" in this case, including fleeing, allegedly possessing a particularly dangerous type of weapon without a serial number, and being in a vehicle where there were multiple loaded firearms. Mr. Rose-Watkins's alleged statement that he fled the SUV because he thought he would not get caught also made the court doubt his willingness to abide by conditions of release.

¶ 14    Based on those facts, the court found that the conditions of release it could impose on Mr. Rose-Watkins were inadequate to ensure the safety of the community: GPS monitoring "[would] do nothing," the court stated, because it would only track his movements and would not prevent him from engaging in similar behavior; 24-7 home confinement was "not allowed by statute or case law"; and a curfew would allow him 12 hours of release into the general public. The court concluded that it was "too risky" to grant Mr. Rose-Watkins release. The court admonished Mr. Rose-Watkins that he now had the right to appeal, and on December 4, 2025, Mr. Rose-Watkins filed a notice of appeal.

¶ 15                                II. JURISDICTION

¶ 16    Mr. Rose-Watkins's petition for relief was denied on November 7, 2025, and he timely filed a notice of appeal on December 4, 2025. We have jurisdiction over this appeal under section 110-6.1(j) of the Code (Pub. Act 104-417, § 1075 (eff. Aug. 15, 2025) (amending 725 ILCS 5/110-6.1(j))) and Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), governing appeals from orders denying the pretrial release of a criminal defendant.

¶ 17                                III. ANALYSIS

¶ 18    Section 110-6.1(e) of the Code provides that "[a]ll defendants shall be presumed eligible for pretrial release." Pub. Act 104-417, § 1075 (eff. Aug. 15, 2025) (amending 725 ILCS 5/110-6.1(e)). The State must seek pretrial detention by filing a timely, verified petition. *Id.* (amending

725 ILCS 5/110-6.1(a), (c)). To obtain that relief, the State must show by clear and convincing evidence that (1) "the proof is evident or the presumption great" that the defendant committed a qualifying offense, (2) based on the facts of the case, he "poses a real and present threat to the safety of any person or persons or the community," and (3) "no condition or combination of conditions" provided in section 110-10(b) of the Code can mitigate either that safety risk or "the defendant's willful flight." *Id.* (amending 725 ILCS 5/110-6.1(e)(1)-(3)).

¶ 19    To appeal a decision relating to pretrial release, a defendant must first file a motion for relief in the circuit court. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). The motion must "request*** the same relief to be sought on appeal and the grounds for such relief," and "[u]pon appeal, any issue not raised in the motion for relief *** shall be deemed waived." *Id.* "The motion for relief will serve as the argument of the appellant on appeal," unless he elects to file an optional memorandum identifying which issues from his motion for relief he wishes to advance on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Any issue properly raised in the motion for relief is before the appellate court regardless of whether the defendant files the optional memorandum. *Id.*

¶ 20    Here, Mr. Rose-Watkins notified this court that he would not file a memorandum on appeal but would instead allow his motion for relief to serve as his argument on appeal, as permitted by Rule 604(h)(7). In that motion, which he filed on November 6, 2025, and titled "Petition for Relief," Mr. Rose-Watkins argued that the circuit court should reconsider his detention and release him with conditions. In support, he noted that he was 21 years old, born and raised in the Chicago area, and had graduated from "Chicago Tech. Academy." Further, most of his family and friends lived in the Chicago area, some of whom had attended every court date since his arrest. If released, he would reside in Chicago with his cousin. He conceded that he had other felony charges pending but noted that he had no felony convictions.

¶ 21    The State, as Rule 604(h)(7) also permits, filed a memorandum on appeal, in which it argues that no conditions of release could mitigate the danger that Mr. Rose-Watkins poses to the community. The State also argues that Mr. Rose-Watkins is appealing a "continued detention" order under section 110-6.1(i-5) of the Code (Pub. Act 104-417, § 1075 (eff. Aug. 15, 2025) (amending 725 ILCS 5/110-6.1(i-5)), which it contends is subject to a more deferential standard of review than an initial detention order, and that we should dismiss Mr. Rose-Watkins's appeal because his petition for relief did not satisfy the requirements of Rule 604(h)(2). We will address those two additional arguments first before turning to the merits of Mr. Rose-Watkins's appeal.

¶ 22    A. Mr. Rose-Watkins is Appealing the Circuit Court's Initial Detention Determination

¶ 23    Section 110-6.1(i-5) of the Code provides that, where a defendant has been detained, the judge must find at each subsequent appearance of the defendant "that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, *** or to prevent the defendant's willful flight from prosecution." Pub. Act 104-417, § 1075 (eff. Aug. 15, 2025) (amending 725 ILCS 5/110-6.1(i-5)). The statute requires this finding at every appearance in court by the defendant and does not require him to file a motion to prompt the court's consideration of whether continued detention is necessary. *People v. Rice*, 2025 IL App (3d) 250262, ¶ 12.

¶ 24    At a continued detention hearing, the State does not need to reestablish the propositions necessary at an initial detention hearing. *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13. Rather, the defendant must present some new information or change in circumstance to show that his continued detention is no longer necessary. *People v. Walton*, 2024 IL App (4th) 240541, ¶¶ 24-29. Some appellate courts have found that continued detention orders are subject to an abuse of discretion standard of review on appeal, rather than *de novo* review, which applies to an initial

detention order where, as here, the only proof was submitted by proffer. See *People v. Post*, 2025 IL App (4th) 250598, ¶¶ 27-29 (collecting cases), *appeal allowed*, No. 132403 (Ill. Nov. 21, 2025). The State argues, in this case, that the appeal before us is of a continued detention and thus the burden was on Mr. Rose-Watkins to show a change in circumstances and not on it to show a need for detention, and that our standard of review is abuse of discretion.

¶ 25     However, in our view, the record makes clear that this appeal is of the circuit court's initial decision, on August 16, 2025, to detain Mr. Rose-Watkins, not its decision on September 11, 2025, to continue detaining him. This is clear based both on what occurred in the trial court and on what Mr. Rose-Watkins has filed in this court.

¶ 26     First, when Mr. Rose-Watkins appeared for arraignment on September 11, 2025, the court reviewed, as a matter of course, whether his continued detention was necessary. Mr. Rose-Watkins did not argue that new information showed his continued detention was unnecessary. Thus, nothing in the transcript of that hearing suggests that Mr. Rose-Watkins was attempting to make a record that circumstances had changed and detention was no longer necessary.

¶ 27     Second, when Mr. Rose-Watkins filed his petition for relief on November 6, 2025, it was comprised solely of facts about his background, which were similar to those he proffered at the initial detention hearing and related to whether conditions of pretrial release could mitigate the danger he posed. Nothing in that petition suggested that Mr. Rose-Watkins had shown that circumstances had changed since his initial detention.

¶ 28     Finally in the notice that Mr. Rose-Watkins filed in this court on January 15, 2026, in lieu of a memorandum, Mr. Rose-Watkins made explicitly clear that the "order being appealed was entered on August 16, 2025," which was the date of his initial detention.

¶ 29     The cases the State cites in support of its contention that this is an appeal from a continued

8

detention are inapplicable. *People v. Hongo*, 2024 IL App (1st) 232482, and *Casey*, 2024 IL App (3d) 230568, involved a prior version of Rule 604(h)(2), which required the appellant to file a notice of appeal within 14 days of the entry of the order being appealed and did not require a motion for relief to be filed as a prerequisite to appeal. See Ill. S. Ct. R. 604(h)(2) (eff. Sep. 18, 2023). The defendants in those cases did not file a notice of appeal challenging the initial detention decision but did file notices of appeal within 14 days of a continued detention hearing, meaning their appeals could only be from the continued detention orders. *Hongo*, 2024 IL App (1st) 232482, ¶¶ 9, 14, 25-26; *Casey*, 2024 IL App (3d) 230568, ¶¶ 6, 13. And in *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 5, the defendant's motion for relief specifically invoked section 110-6.1(i-5), relating to continued detention, which Mr. Rose-Watkins did not do here.

¶ 30    In short, we view this as an appeal from the initial detention and will review it as such.

¶ 31    B. The Petition for Relief Adequately Pled Grounds for Relief Under Rule 604(h)(2)

¶ 32    The State also argues that we should dismiss, rather than consider the merits of this appeal, because Mr. Rose-Watkins's petition for relief failed to satisfy the requirements of Rule 604(h)(2). In support, the State cites several cases in which the reviewing court dismissed a defendant's appeal for failing to file a motion for relief that satisfied Rule 604(h)(2).

¶ 33    In the most analogous case, *People v. Burries*, 2025 IL App (5th) 241033, ¶¶ 6, 15, 22, the defendant filed a motion to reconsider a continued detention order. The motion discussed where the defendant would live if released, that he had family in the area, and his health problems, and asked the court to reconsider his detention, without identifying any specific error, legal standard, or "new evidence or information relating to pretrial release." *Id.* ¶ 22. The circuit court treated the motion as one for relief under Rule 604(h)(2) and denied it, and the defendant appealed, filing a memorandum "challenging each detention order entered by the circuit court," but "primarily" the

initial detention order. *Id.* ¶¶ 7-15.

¶ 34    The appellate court found that, on top of failing to reference Rule 604(h)(2) or any other authority, the body of the motion "contained no viable grounds for relief" from the continued detention order that it was attacking or the initial detention hearing, and failed to give the circuit court the opportunity to review the claims he raised on appeal. *Id.* ¶¶ 22-25. The failure to provide any grounds for relief meant the motion could not serve as the prerequisite to appeal contemplated by Rule 604(h)(2). *Id.* ¶ 25. The court found that, without a proper motion for relief, it lacked authority to reach the merits of the defendant's arguments on appeal and was required to dismiss the appeal, reiterating that the motion failed to identify any error in the continued detention order that his motion sought reconsideration of. *Id.* ¶¶ 26-30.

¶ 35    While we agree with the State that, as in *Burries*, the defendant here could have done a better job of filing a motion that complied with Rule 604(h)(2), we do find *Burries* distinguishable in at least two respects.

¶ 36    First, the motion at issue in *Burries* was understood by the court in that case to be an attempt to challenge the defendant's continued detention, whereas we have found that this case involves a motion directed at the court's initial detention determination. In *Burries*, the defendant was required to identify some new information that he had presented following the initial detention order that showed that continuing to detain him was unnecessary. *Burries*, 2025 IL App (5th) 241033, ¶ 20; *Walton*, 2024 IL App (4th) 240541, ¶¶ 24-29 (establishing that, to obtain release at a continued detention hearing, the defendant must present some new information or change in circumstance). By failing to do so, the defendant in *Burries* did not present any ground in his motion on which the circuit court could have granted him relief or on which the appellate court could have found that the circuit court erred.

¶ 37    Because Mr. Rose-Watkins is challenging an initial detention order, he did not need to identify any new information he had presented to the circuit court following his initial detention that the circuit court failed to properly weigh. Rather, he needed to provide a reason that the circuit court erred in finding the State met its burden at the initial detention hearing. He did so, where the facts in his petition clearly related to the issue of whether the State showed that no condition or combination of conditions could mitigate the danger that he presented. Unlike the motion in *Burries*, his petition therefore did not lack a component necessary for a court to grant him the relief he sought.

¶ 38    *Burries* is also different because the appellate court determined that the motion in that case gave no clue to either the circuit court or the appellate court as to what the defendant's argument was. *Burries*, 2025 IL App (5th) 241033, ¶ 25 (noting that even if the court excused the motion's lack of citations to authority, "none of [the motion's] contents gave the circuit court the opportunity to review the claims the defendant *** raised on appeal"). Here, we conclude that the issue is clear—were there conditions under which Mr. Rose-Watkins could be released safely into the community? The circuit court reviewed this issue and rejected the argument. We can now review that decision on appeal. Accordingly, we will not dismiss Mr. Rose-Watkins's appeal.

¶ 39            C. The Circuit Court Did Not Err in Ordering Mr. Rose-Watkins's Detention

¶ 40    On the merits, we agree with the State and with the circuit court that the State proffered evidence showing that there were no conditions under which Mr. Rose-Watkins could be safely released into the community, and we find that nothing that Mr. Rose-Watkins raised in his petition calls that conclusion into doubt.

¶ 41    The burden was on the State to show by clear and convincing evidence that no conditions could mitigate the danger posed to the community by the release of Mr. Rose-Watkins prior to

trial. Pub. Act 104-417, § 1075 (eff. Aug. 15, 2025) (amending 725 ILCS 5/110-6.1(e)(3)). Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question" (internal quotation marks omitted) (*People v. White*, 2024 IL App (1st) 232245, ¶ 19), although it is a less demanding standard than the beyond-a-reasonable-doubt standard necessary for a conviction (*People v. Morales*, 2024 IL App (2d) 230597, ¶ 15). The State may make the required showings without complying with the rules concerning the admissibility of evidence at trial and "may present evidence at the hearing by way of proffer based upon reliable information." Pub. Act 104-417, § 1075 (eff. Aug. 15, 2025) (amending 725 ILCS 5/110-6.1(f)(2), (5)). Where, as here, the evidence at a detention hearing is submitted by proffer and no live witnesses testified, our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶¶ 21, 51.

¶ 42    In determining whether any condition or combination of conditions can mitigate the threat to the community that a defendant poses, and the likelihood of his compliance with those conditions, the circuit court must consider such matters as: the nature and circumstances of the offense charged; whether, at the time of the charged offense, the defendant was on release pending trial for another offense; and the nature and seriousness of the threat that the defendant poses based on the facts of the case. 725 ILCS 5/110-5(a)(1), (3)(B), (4) (West 2024). The conditions that a court may impose include, but are not limited to, ordering the defendant to refrain from possessing a firearm or other dangerous weapon or placing him under home supervision, with or without electronic monitoring. *Id.* § 110-10(b).

¶ 43    The record here shows that the circuit court thoughtfully considered the relevant factors. As the circuit court pointed out, Mr. Rose-Watkins had already been arrested and charged with AUUW in another case and been allowed pretrial release when he allegedly committed AUUW

here. As a condition of that release, he could not violate any criminal statutes and had to surrender any firearms in his possession. See *id.* § 110-10(a)(4)-(5) (providing that if a person is released prior to conviction, conditions "shall" include that he not violate "any criminal statute," and if he is accused of AUUW, he must "surrender all firearms in his *** possession"). The State's proffer regarding his alleged conduct here, illegally possessing a firearm, therefore supports a finding that he is willing to disregard conditions of pretrial release and accordingly supports his pretrial detention. See *Hongo*, 2024 IL App (1st) 232482, ¶ 36 (finding that a defendant's "history of failing to abide by prior conditions of release placed upon him, by possessing a weapon while prohibited from doing so, further suggest[ed] that continued detention [wa]s necessary to avoid the safety risk posed by [the] defendant").

¶ 44 Further, the gun Mr. Rose-Watkins allegedly possessed was a so-called "ghost gun," a homemade firearm without a serial number "designed to avoid surveillance and avoid notice by law enforcement." *People v. Davis*, 2023 IL App (1st) 231856, ¶¶ 6 n.2, 27. His possession of a weapon designed to be untraceable and his flight from the scene because he thought he could outrun the police further suggest that he attempted to knowingly violate the law in a manner that would prevent him from being caught. This also weighs in favor of a finding that he will not comply with conditions of pretrial release.

¶ 45 We must also note that, even though Mr. Rose-Watkins was not the driver, the fact that he allegedly possessed a loaded ghost gun with an extended magazine, while in a vehicle that was being driven recklessly, with other people who may also have been in possession of loaded guns, increased the potential danger of his conduct beyond that of a typical possession offense. See *Vance*, 2024 IL App (1st) 232503, ¶ 22 (noting that "the police may have prevented a violent crime from imminently taking place" when they arrested the defendant while he drove a stolen vehicle

13

with two passengers and all three possessed loaded guns). These facts show that the nature of the threat he poses is severe, a proper consideration when determining whether conditions exist that can ensure the community's safety. 725 ILCS 5/110-5(a)(4) (West 2024).

¶ 46   The facts emphasized by Mr. Rose-Watkins in his petition do not change this conclusion. They indicate that he has a local support system of family and friends, has never been convicted of a felony, and his other case was referred to a restorative justice program before his arrest here. However, the same facts applied before he allegedly violated the conditions of release imposed on him in his other case by committing another AUUW offense. They therefore do not establish that he would comply with conditions of release if they were imposed in this case. Indeed, his alleged conduct in this case, while he was already on pretrial release, demonstrates his willingness to violate the law and conditions. Given the unlikelihood that he would abide by conditions of release, the nature of the crime charged, and the circumstances surrounding its alleged commission, the State proved by clear and convincing evidence that no condition or combination of conditions could mitigate the safety risk that Mr. Rose-Watkins poses.

¶ 47                            VI. CONCLUSION

¶ 48   For the above reasons, we affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 49   Affirmed.

14