2026 IL App (1st) 260509

FIFTH DIVISION
June 25, 2026

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-26-0509B

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 25CR1166601 |
| | ) | |
| RONALD DAVIS, | ) | Honorable |
| | ) | Shauna L. Boliker and |
| Defendant-Appellant. | ) | Natosha C. Toller, |
| | ) | Judges Presiding. |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justice Oden Johnson concurred in the judgment and opinion.
Justice Wilson specially concurred, with opinion.

**OPINION**

¶ 1   Defendant Ronald Davis appeals from the circuit court's order detaining him before trial pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2024) (as amended by Pub. Act 101-625, § 10-255 (eff. Jan. 1, 2023) and Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act)). Mr. Davis argues that the State failed to show that he was a threat to the safety of any person or the community and no condition or combination of conditions on pretrial release could mitigate that safety risk. Mr. Davis also argues that the circuit court erred during the hearing on his motion for relief by analyzing whether he should continue to be detained rather than address his claims that the State

failed to meet its burden of showing that his detention was necessary.

¶ 2    For the following reasons, we agree with Mr. Davis that the circuit court mistakenly considered his motion for relief as a request to find that his continued detention was no longer necessary. However, that error does not prevent us from reviewing whether the State established that Mr. Davis's detention was necessary. We find that the State made the necessary showings and affirm the circuit court's judgment ordering Mr. Davis's pretrial detention.

¶ 3                              I. BACKGROUND

¶ 4    On September 26, 2025, Mr. Davis was charged by felony complaint with unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2024)). The offense was detainable under the Code because it carried a minimum sentence of two years in prison (*id.* § 24-1.1(e)), and the Code allows detention for non-probationable felonies and non-probationable violations of the UPWF statute (725 ILCS 5/110-6.1(a)(1), (a)(6)(O)(i) (West 2024)). On the same day, the State filed a petition to detain Mr. Davis before trial, alleging that he posed a threat to the safety of a person or the community, and the court held a hearing on the petition.

¶ 5    At the hearing, the State proffered that, the previous afternoon, police officers stopped a car that they had seen fail to come to a complete halt at a stop sign. Mr. Davis was the vehicle's driver and registered owner. The officers smelled fresh cannabis in the vehicle, and when asked, a passenger in the back seat stated that there was cannabis in the car. The officers searched the vehicle and found cannabis in the center armrest. In the trunk, which "was immediately accessible from the backseat of the vehicle," they found a small black bag containing a semiautomatic .40-caliber handgun equipped with an extended magazine and one loose .40-caliber live round. Mr. Davis denied knowing that the firearm was in the vehicle. He had no firearm owner's identification (FOID) card or concealed-carry license (CCL).

¶ 6 The State continued that Mr. Davis had previously been convicted of UPWF and "child endangerment involving death," following an incident where "a child shot themself with a loaded and unsecured firearm." At this hearing, the State said that those convictions were from 2019, but elsewhere in the record the State indicated they were from 2022. Mr. Davis was sentenced to concurrent 4½ year prison terms for those offenses. Before that, he had been convicted of felony manufacture or delivery of cannabis in either 2010 or 2013. He was sentenced to probation for that offense, which the State said had terminated unsatisfactorily, but which defense counsel stated had been successfully completed. Mr. Davis also had a prior conviction for possession of cannabis, which had been charged as a felony but was reduced to a misdemeanor.

¶ 7 The State argued that the proof was evident or presumption great that Mr. Davis committed UPWF and was a danger to the community based on the facts of the offense and his criminal history. The State also argued that he would not comply with conditions of pretrial release and no such conditions could mitigate the threat that he posed given his possession of a gun following a previous gun conviction.

¶ 8 Mr. Davis proffered that the gun was in a zipped bag and argued that the trunk where it was found was only accessible from within the vehicle if the back seats were folded down. Because two passengers were in the back seat, Mr. Davis therefore had no access to the gun. There were three total passengers in the car, and Mr. Davis was not the only person that drove the vehicle, although it was registered to him. His criminal history included no violent offenses, and he complied with the officers throughout the stop. His counsel noted that pretrial services did not flag him as likely to commit a violent crime if released. He lived in Lansing, Illinois, had a seven-year-old child and a two-year-old child, had earned an associate's degree as an automotive technician and been self-employed in that capacity, and had a job interview scheduled for the morning of the

hearing.

¶ 9    Pretrial services officers scored Mr. Davis a three out of six on both the scale for new criminal activity and the scale for failure to appear and recommended "Pretrial Supervision Level 1." Mr. Davis was 33 years old on the date of his arrest.

¶ 10    The court granted the State's petition, finding that the State proved by clear and convincing evidence that the proof was evident or presumption great that Mr. Davis committed UPWF, he posed a real and present threat to the safety of individuals or the community, and no conditions could mitigate that threat.

¶ 11    On October 15, 2025, the grand jury issued a superseding indictment charging Mr. Davis with UPWF premised on possessing a handgun on or about his person (720 ILCS 5/24-1.1(a) (West 2024)), aggravated unlawful possession of a weapon (AUPW) premised on carrying a firearm in a vehicle without a FOID card (*id.* § 24-1.6(a)(1), (a)(3)(C)), and AUPW premised on carrying a handgun in a vehicle without a CCL where the firearm was uncased, loaded, and immediately accessible (*id.* § 24-1.6(a)(1), (a)(3)(A-5)). All three charges were non-probationable, based on Mr. Davis's criminal history, and therefore detainable offenses. See *id.* §§ 24-1.1(e), 24-1.6(d)(3); 725 ILCS 5/110-6.1(a)(1), (a)(6)(O)(i)-(ii) (West 2024)).

¶ 12    At a hearing on December 9, 2025, Mr. Davis requested the court review his detention. In addition to repeating his prior arguments, he advised the court that he had a herniated disk for which he was receiving inadequate treatment in custody and that, if released, he would live in Cook County with his friend or his mother. The State repeated its prior arguments and added that, in addition to the criminal history already discussed at the initial detention hearing, Mr. Davis was convicted of criminal damage to property in 2007. The court found that Mr. Davis should remain detained because the fact that he was a felon in possession of a gun with an extended magazine,

which the court called "a killing weapon," made him a safety risk.

¶ 13    On January 27, 2026, the court held a status hearing and, without hearing argument, ordered Mr. Davis's continued detention.

¶ 14    On February 19, 2026, Mr. Davis filed a "MOTION FOR RELIEF" requesting the court grant him relief from detention "and/or" reconsider its September 26, 2025, decision to detain him. Mr. Davis argued that the facts of the case did not establish that he posed a real and present threat to the safety of any person or the community. He noted that there was no allegation that his charged crimes involved violence and asserted that, alone, illegally possessing a firearm did not make him a threat to the community, citing *People v. Martinez*, 2024 IL App (1st) 240241-U. He also asserted that the State provided no specific facts or allegations suggesting that he would not comply with any conditions of pretrial release that could mitigate the threat that he posed. He repeated that he had young children and a herniated disc, worked as a mechanic, and noted that he would live with his mother if released.

¶ 15    The court held a hearing on March 16, 2026. The court asked Mr. Davis's counsel if she "wanted a date today for a possible detention hearing," and counsel responded affirmatively and noted she had filed a "formal motion." The court stated it had reviewed the motion and counsel could discuss "continued detention." Counsel largely rested on the arguments from Mr. Davis's motion and additionally argued that the State had failed to adequately prove that Mr. Davis had possessed the gun. Counsel also noted that Mr. Davis had filed a motion to suppress evidence and asked the court "to consider that as a new matter in this case." The State argued that it was "a continued detention hearing" and the State had established the propositions necessary to detain Mr. Davis at his first appearance. The State contended that no change in circumstances had occurred making Mr. Davis's detention no longer necessary.

¶ 16    The court stated that Mr. Davis's pretrial detention had been found proper at his initial appearance and the question before it was "a continued detention analysis," which required it to determine whether Mr. Davis was still "the safety risk that the initial appearance judge already found [him] to be." The court stated that "really the only new fact" that had been provided since December 9, 2025, when it had also performed a continued detention analysis, was that Mr. Davis would live with his mother if released. The court further found that, "by clear and convincing evidence," Mr. Davis was dangerous because he was a felon, the gun was a "rifle-like gun with an extended magazine," and he had just served a sentence for a gun offense with an "attached child endangerment."

¶ 17    On March 17, 2026, Mr. Davis filed a notice of appeal naming the dates of hearings regarding his pretrial release as September 26, 2025, January 27, 2026, and March 16, 2026. He and the State both filed memoranda on appeal pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024).

¶ 18                              II. JURISDICTION

¶ 19    The court denied Mr. Davis's motion for relief on March 16, 2026. He timely filed a notice of appeal the next day. We have jurisdiction over this appeal under section 110-6.1(j) of the Code (725 ILCS 5/110-6.1(j) (West 2024)) and Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), which govern appeals from orders denying the pretrial release of a criminal defendant.

¶ 20                              III. ANALYSIS

¶ 21    Section 110-6.1(e) of the Code provides that "[a]ll defendants shall be presumed eligible for pretrial release." 725 ILCS 5/110-6.1(e) (West 2024). The State must seek pretrial detention by filing a timely, verified petition. *Id* § 110-6.1(a), (c)-(d). To obtain that relief when it alleges that the defendant is dangerous, the State must prove by clear and convincing evidence that (1) "the

proof is evident or the presumption great that the defendant" committed a qualifying offense, (2) based on the facts of the case, he "poses a real and present threat to the safety of any person or persons or the community," and (3) "no condition or combination of conditions" provided in section 110-10(b) of the Code can mitigate that safety risk. *Id.* §§ 110-6.1(e)(1)-(3), 110-10(b).

¶ 22    "Clear and convincing evidence" has been described as "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question" (internal quotation marks omitted) (*People v. White*, 2024 IL App (1st) 232245, ¶ 19), although it is a less demanding standard than the beyond-a-reasonable-doubt standard necessary for a conviction (*People v. Morales*, 2024 IL App (2d) 230597, ¶ 15). At a pretrial detention hearing, the State need not comply with the evidentiary rules applicable at trial and "may present evidence at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2), (5) (West 2024).

¶ 23    Section 110-6.1(j) of the Code provides a defendant the right to appeal from an order denying pretrial release. *Id.* § 110-6.1(j); Ill. S. Ct. R. 604(h)(1)(iii) (eff. Apr. 15, 2024). Where, as here, the parties submitted the evidence at the pretrial detention hearing by proffer and no live witnesses testified, we review *de novo* whether the State proved that detention was necessary. *People v. Morgan*, 2025 IL 130626, ¶¶ 21, 51.

¶ 24    On appeal, Mr. Davis argues that the State failed to prove that he posed a threat to the community that no conditions of pretrial release could mitigate. He does not argue that the State failed to show that the proof was evident or presumption great that he committed a detainable offense. Mr. Davis also claims that the circuit court erred in applying the wrong standard to his motion for relief by analyzing whether he should remain detained rather than whether he should have been detained in the first place. We start with Mr. Davis's third argument, agreeing with Mr.

Davis that his motion for relief called for the circuit court to consider whether there had been errors at his September 26, 2025, initial detention hearing. The question before us is therefore whether the circuit court erred in finding that the State showed his detention was necessary and not, as the State contends, whether it later erred by ordering his continued detention.

¶ 25    A. Mr. Davis Is Challenging Whether the State Showed His Detention Was Necessary

¶ 26    Rule 604(h)(2) provides that, as a prerequisite to an appeal under the Pretrial Fairness Act, "the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). The motion serves multiple purposes, allowing "the movant to identify errors in the circuit court's detention decision," giving "the court the chance to correct any errors and potentially change its ruling in the movant's favor," and crystallizing the issues for appeal. *People v. Patterson*, 2025 IL App (1st) 250510, ¶¶ 18-19. The circuit court "shall promptly hear and decide the motion for relief," after which the defendant may file a notice of appeal. Ill. S. Ct. R. 604(h)(2)-(3) (eff. Apr. 15, 2024). On appeal, any issue not raised in the motion is waived, except for errors that first occurred at the hearing on the motion. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). The issues raised in the motion are before the appellate court, and the defendant may also file a memorandum identifying which issues from the motion he wishes to advance on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 27    In his motion for relief, Mr. Davis argued that the court had erred in finding that he posed a danger to the community and that no conditions could mitigate that danger. His motion specifically requested the court grant him relief "and/or" reconsider the detention order from September 26, 2025. As he points out, however, the circuit court did not address at the hearing on his motion whether it had erred in initially ordering his detention. Rather, the court stated it was

performing "a continued detention analysis," like it had performed during the December 9, 2025, hearing, and this required it to determine whether he was still the safety risk that he was found to be at his initial appearance.

¶ 28    The phrase "continued detention" refers to section 110-6.1(i-5) of the Code, which provides that, after a defendant has been detained, the judge must find at each of the defendant's subsequent appearances that "[his] continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(i-5) (West 2024). The defendant need not file a motion to prompt the court to consider whether his continued detention is necessary. *People v. Rice*, 2025 IL App (3d) 250262, ¶ 12. At a continued detention hearing, the State does not need to reestablish the propositions necessary at an initial detention hearing. *People v. Mulbrandon Casey*, 2024 IL App (3d) 230568, ¶ 13. Rather, the court "starts from the premise that detention was necessary to guard against [the threat posed by a defendant] and asks whether anything has changed such that a defendant's detention is no longer warranted." *People v. Thomas*, 2024 IL App (1st) 240479, ¶ 14. The difference is significant and may also require different standards of review on appeal, as some appellate courts have found that continued detention orders are reviewed for an abuse of discretion rather than *de novo*, the standard that applies to initial detention orders where the only proof was submitted by proffer. See *People v. Post*, 2025 IL App (4th) 250598, ¶¶ 27-29 (collecting cases), *appeal allowed*, No. 132403 (Ill. Nov. 21, 2025).

¶ 29    The State argues that the circuit court applied the correct standard to Mr. Davis's motion for relief. Relying on *Thomas*, the State contends that, "[o]nce a defendant has been detained, any later request seeking release necessarily implicates the validity of the detention order and becomes an inquiry into the necessity of continued detention."

¶ 30 Section 110-6.1(j) expressly allows the defendant "to appeal any order entered under this Section denying his or her pretrial release." 725 ILCS 5/110-6.1(j) (West 2024). The motion that Mr. Davis filed was necessary because, shortly after the Pretrial Fairness Act went into effect, our supreme court amended Rule 604 to make the filing of a motion a prerequisite to that appeal. Compare Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023), with Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Mr. Davis's "motion for relief serve[d] as the prerequisite for appealing a detention decision order, not for the court to determine whether continued detention [was] necessary." *Rice*, 2025 IL App (3d) 250262, ¶ 12. By filing a notice of appeal after the court denied his motion for relief and filing a memorandum on appeal advancing his arguments that the State failed to make the showings necessary to warrant his detention, Mr. Davis has properly placed before us the question of whether the State proved under section 110-6.1(e) that his detention was necessary. Ill. S. Ct. R. 604(h)(2)-(3), (7) (eff. Apr. 15, 2024).

¶ 31 In *Thomas*, the circuit court applied the initial detention standard to a question of continued detention, which arose after the defendant had already appealed the initial detention decision. *Thomas*, 2024 IL App (1st) 240479, ¶¶ 4-5, 10, 13. On appeal from the court's order that the defendant remain detained, we found that, although questions of initial and continued detention "concerned *** fundamentally the same question," the continued detention standard was "less demanding" than the initial detention standard. *Id.* ¶ 14. However, the circuit court's application of the initial detention standard did not affect the outcome of the appeal because it "necessarily encompassed the continued detention finding required by section 110-6.1(i-5)." *Id.* ¶¶ 13-14. We applied the correct continued detention standard to the defendant's appeal. *Id.* ¶¶ 13-14, 18.

¶ 32 The State's reliance on *Thomas* is misplaced. This case presents the opposite scenario from *Thomas* because the circuit court here applied the less-demanding continued detention standard

when Mr. Davis specifically requested it consider whether errors had occurred at the initial detention hearing. In contrast to *Thomas*, Mr. Davis had not previously appealed the result of the initial detention hearing. See *id.* ¶ 4. Nothing in *Thomas* suggests that, simply because the circuit court has held a subsequent continued detention hearing, a detained defendant loses the right to appeal the initial detention decision. Because Mr. Davis's motion for relief specifically asked the circuit court to consider whether it had erred in finding that the State made the initial showings necessary for the court to detain him, that is the analysis the circuit court should have engaged in when it considered the motion.

¶ 33 While we agree with Mr. Davis that the circuit court failed to consider the claims he raised in his motion for relief, we reject his argument that this requires a remand for the circuit court to reconsider that motion. Our review of the court's finding that the State proved detention was necessary is *de novo*, placing us "in the same position as the circuit court." *Morgan*, 2025 IL 130626, ¶ 51. We have a record on which we can consider each of Mr. Davis's arguments about the showings the State was required to make for the court to detain him. We therefore turn to the merits of those arguments.

¶ 34 B. Mr. Davis Poses a Threat to the Community

¶ 35 Mr. Davis contends that the State failed to show by clear and convincing evidence that he poses a threat to any person or the community. He argues that there was minimal evidence that he possessed the firearm in the trunk of his car where he had no immediate access to the firearm, it was in a zipped bag, and the two people in the back seat could access the trunk. He also notes that he complied with the officers throughout the stop and search of his car, and none of his prior offenses involved violence.

¶ 36 To determine whether a defendant poses a real and present threat to the safety of any person

or the community, section 110-6.1(g) of the Code directs the court to consider factors such as the nature and circumstances of the charged offense, whether the offense involved a weapon, the defendant's history and characteristics, and "[w]hether the defendant is known to possess or have access to any weapon or weapons." 725 ILCS 5/110-6.1(g)(1)-(2), (7) (West 2024). These factors support the circuit court's finding here.

¶ 37    The possession of firearms is regulated to protect the public's safety. For example, the legislature established the FOID card system because "in order to promote and protect the health, safety and welfare of the public, it [wa]s necessary and in the public interest to provide a system of identifying persons who are not qualified to acquire or possess firearms, [or] firearm ammunition." 430 ILCS 65/1 (West 2024). Illinois law prohibits felons from possessing firearms (720 ILCS 5/24-1.1 (West 2024)), prohibits anyone from possessing guns in a vehicle without a FOID card (*id.* § 24-1.6(a)(1), (a)(3)(C)), and prohibits anyone from possessing a handgun that is uncased, loaded, and immediately accessible without a CCL (*id.* § 24-1.6(a)(1), (a)(3)(A-5)). Mr. Davis is charged with violating each of these safety measures. Although it remains to be seen whether the State will prove him guilty beyond a reasonable doubt at trial, he does not, as noted, argue in this appeal that the State failed to establish that the proof is evident or presumption great that he committed any of these three detainable offenses.

¶ 38    We find it particularly compelling that Mr. Davis's alleged illegal possession of a firearm came after he had already been convicted of illegal gun possession in connection with what the State described as "child endangerment involving death," following an incident where "a child shot themself with a loaded and unsecured firearm." The threat to community safety is heightened where Mr. Davis is alleged to have acquired and possessed a firearm illegally after a previous conviction for gun possession that was related to the death of a child.

¶ 39 We recognize that the State's proffer did not indicate that the gun in Mr. Davis's trunk was loaded or that he brandished or pointed the gun at anyone. However, a live round was in the bag with the gun, so it could be quickly loaded and fired, and "a person does not have to be an active shooter to be dangerous for the purposes of pretrial detention." *People v. Lanier*, 2025 IL App (1st) 242603, ¶ 75.

¶ 40 In his motion for relief, Mr. Davis cited *Martinez*, 2024 IL App (1st) 240241-U, an unpublished decision in which we reversed an order for pretrial detention where the defendant was charged with UPWF. In that case, officers found the defendant with a loaded handgun during a traffic stop while he was on parole following 28-year-old convictions for murder and unlawful possession of a handgun committed when he was a juvenile. *Id.* ¶¶ 5-6, 14. We found that the evidence of the charged offenses and his status as a parolee, without more, did not support a finding that he posed a threat to the community. *Id.* ¶¶ 14-15. Unlike the defendant in *Martinez*, this is the second time that Mr. Davis has been accused of possessing a firearm after having been convicted of a felony. Also, Mr. Davis's UPWF and child endangerment convictions did not occur when he was a juvenile.

¶ 41 As the State notes, Mr. Davis has been repeatedly informed that he cannot possess a gun, and the dangers of doing so were made undeniable by the circumstances of his prior convictions. The court did not err in finding that Mr. Davis poses a threat to the community where he stands accused of possessing another gun in public.

¶ 42          C. No Conditions Can Mitigate the Threat that Mr. Davis Poses

¶ 43 When a defendant is released pending trial, necessary conditions include that he not violate any criminal statute and, when charged with UPWF or AUPW, that he surrender all his firearms. 725 ILCS 5/110-10(a)(4)-(5) (West 2024). The court may also require the defendant to "[r]efrain

from possessing a firearm or other dangerous weapon" or be placed on electronic monitoring or other similar conditions, so long as the conditions are individualized and "the least restrictive means" of ensuring that the defendant, *inter alia*, complies with all conditions of pretrial release and does not commit any criminal offense. *Id.* § 110-10(b)(2), (5), (9).

¶ 44 When considering whether conditions short of detention are appropriate, the court must also consider the likelihood that the defendant will comply with those conditions. *People v. Bueno*, 2024 IL App (2d) 240053, ¶ 13 (citing 725 ILCS 5/110-2(a), 110-5(a) (West 2022)). The evidence relating to whether conditions less restrictive than detention can mitigate the threat that a defendant poses "will frequently overlap with the evidence" that establishes the defendant is dangerous. *People v. Carpenter*, 2024 IL App (1st) 240037, ¶ 17.

¶ 45 Mr. Davis argues that the State and circuit court never discussed why any specific conditions, like curfews or electronic monitoring, were insufficient to mitigate the threat that he posed and instead relied only on his prior gun conviction. He contends that his prior convictions do not eliminate the presumption that he is entitled to release. He compares his case to *People v. Stock*, 2023 IL App (1st) 231753, ¶¶ 17-19, where we found that, without more, the basic allegations of the defendant's charged offense were insufficient to show that no conditions could mitigate the threat that the defendant posed. He also cites *People v. Castillo*, 2024 IL App (1st) 232315, ¶ 25, where the State did not show that detention was necessary because it did not establish that less restrictive measures were insufficient to mitigate the threat posed by the defendant.

¶ 46 Mr. Davis's case is not like *Stock* or *Castillo* because in both cases the defendants had no prior convictions. See *id.* ¶ 7; *Stock*, 2023 IL App (1st) 231753, ¶ 6. Here, as discussed, Mr. Davis stands accused of illegally possessing a firearm for a second time. This creates doubt that he would comply with the conditions that the court could impose on him, which must be considered when

determining whether detention is necessary. *Bueno*, 2024 IL App (2d) 240053, ¶ 13.

¶ 47    Further, while the circuit court may not have said so explicitly, electronic monitoring and home confinement would not prevent Mr. Davis from obtaining another gun and taking it out in public if he chose to do so. A person on pretrial home confinement must be allowed movement on at least two days per week. 730 ILCS 5/5-8A-4(A-1) (West 2024). "Electronic monitoring and curfews might tell the sheriff's office where [the defendant] is but not what he is doing or what he possesses." *Lanier*, 2025 IL App (1st) 242603, ¶ 79. Thus, the court did not err in determining that no conditions or combination of conditions on pretrial release could mitigate the danger posed by Mr. Davis.

¶ 48                                    IV. CONCLUSION

¶ 49    For the foregoing reasons, the State demonstrated by clear and convincing evidence that Mr. Davis poses a threat to the community and no conditions of pretrial release could mitigate that threat. We therefore affirm the judgment of the circuit court of Cook County ordering him detained pretrial.

¶ 50    Affirmed.

¶ 51    JUSTICE WILSON, specially concurring:

¶ 52    I fully concur in the judgment and analysis reached by the Court in this appeal. The record makes unmistakably clear that the defendant's February 19, 2026 motion for relief expressly sought two forms of relief: (1) release from continued detention "and/or" (2) reconsideration of the trial court's original September 26, 2025, order directing that he be detained. Despite the facial clarity of that filing, the trial court proceeded under the misapprehension that the motion presented only a challenge to continued detention—not to the propriety of the original detention determination. The State adopted the same mistaken premise.

¶ 53    I write separately to express significant concern that defense counsel failed to correct this misunderstanding when it mattered most. The oversight is particularly troubling because the motion itself was the vehicle through which the defendant sought direct review of the original detention ruling—relief the trial court never addressed. Counsel allowed the court's truncated interpretation of the motion to stand unchallenged, and never meaningfully argued the portion of the filing that attacked the legal and factual basis of the initial detention order.

¶ 54    This failure is made more perplexing by the procedural posture of the case. As the record reflects, several continued-detention hearings occurred in the months preceding the filing of the February 19 motion. Those intervening proceedings may have contributed to the confusion, but they in no way relieved counsel of the duty to ensure that the full scope of the motion was made unmistakably known to the trial court.

¶ 55    Illinois courts have long held that when a judge misstates the nature of a party's argument, counsel must correct the error or risk forfeiture. Silence in the face of a judicial misunderstanding is often treated as acquiescence, and appellate courts—rightly—hesitate to revive arguments never properly presented or preserved below. As our courts have repeatedly emphasized, attorneys may not remain silent when a court's misunderstanding threatens to distort the issues or the law, nor may they withhold controlling authority or essential clarification when the law plainly requires it.

¶ 56    Although we appropriately decide this appeal without invoking forfeiture, the circumstances here warrant a reminder: when counsel fails to correct a trial court's fundamental misunderstanding of a motion—particularly one that expressly seeks alternative forms of relief— later review becomes unnecessarily complicated and, in some cases, unavailable. This entire issue could have been avoided, or at minimum properly ventilated, had defense counsel affirmatively clarified that the motion for relief sought both reconsideration of the original detention order

"and/or" release from continued detention.

¶ 57    For these reasons, while I join the Court's opinion in full, I write separately to highlight the avoidable procedural shortcomings that obscured the true nature of the defendant's request and complicated the appellate review that followed.

---

### *People v. Davis*, 2026 IL App (1st) 260509

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 25-CR-1166601; the Hon. Shauna L. Boliker and the Hon. Natosha C. Toller, Judges, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Sharone R. Mitchell Jr., Public Defender, of Chicago (Rebecca A. Cohen, Assistant Public Defender, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (Karen Kerbis, Special Assistant State's Attorney, of counsel), for the People. |